Indictment for passing counterfeit money, knowing it to be such. The indictment charged that the defendant, "designing and intending to injure and defraud one Millington Patillo, with force and arms, in the county aforesaid, did pass as good and genuine, to the said Millington Patillo, a false, forged, and counterfeited promissory note, commonly called a bank note, purporting to be a good and genuine bank note of $100 on the bank of the State of South Carolina, which said false, forged, and counterfeited bank note is as follows: that is to say (the paper was here set (444) out verbatim), with an intent then and there to defraud the said Millington Patillo, he, the said James Ward, at the time he so passed the said counterfeited bank note, well knowing," etc.
The defendant was convicted before Daniel, J., and moved for a new trial, (1) Because the State's panel of jurors, summoned by the sheriff's officers on the morning of the day of trial, had been discharged by the court, and atales jury ordered, by whom he was tried. The facts on this part of the case were that the defendant was placed at the bar and declared himself ready for trial; the solicitor declared he was not ready on the part of the State, and remarked that he should be compelled to file an affidavit for removal of the cause, because the State could not have justice done it, as there were not twelve of the original panel, and that several of the tales
jurors summoned were men strongly suspected and implicated in the same species of offense with the defendant, but that he could not make it so appear as to support a challenge for cause. While he was preparing the affidavits, the court remarked that if the parties wished to try the indictment he would *Page 249 
discharge the tales already summoned and direct the sheriff to return another tales, giving him no direction as to whom he should return. No objection was made by either party, and the sheriff returned, on two pieces of paper, the names of bystanders summoned. The clerk called the names on one of the pieces of paper, when the solicitor observed that one of the names called was on the list of tales which had been discharged; that he had objected to it principally because of this man, and that if he was a juror he could not try. The court, not knowing that the return was on two pieces of paper, and thinking a jury might be obtained without reaching the objectionable name, ordered the clerk to call the first four names on the list; the clerk did call the first four on the other piece of paper, and they, with (445) the original panel, made up a jury.
Another ground on which a new trial was moved for was that the jury had taken out of court on retirement several bank notes which had been introduced in evidence to prove the note which defendant had passed a counterfeit. As to this part of the case it appeared that Colonel Erwin, cashier of the bank at Morganton, was called as a witness, and after stating that a very large quantity of the notes of the Bank of South Carolina had passed through his hands, proceeded to describe the vignettes, etc., of two-dollar bills and of one-hundred-dollar bills of that bank, and then stated that he believed this was a bill originally for $2, which had been altered to a bill for $100. He then exhibited two genuine bills of these several denominations, which the jury requested to take out with them, and, as no objection was made, did take out with them. The defendant's counsel on the trial admitted the bill in question to be a forgery, and rested the defense on Ward's ignorance of that fact.
The motion for a new trial was overruled.
It was then moved in arrest of judgment that the indictment did not aver that there was such a bank as the Bank of South Carolina.
This was also overruled, and sentence was passed, from which there was an appeal.
Another point in the case arose on the defendant's prayer to be bailed, the solicitor contending that, as there was a conviction, the defendant could not be bailed unless by consent of the prosecuting officer of the State, and the court refused to bail.
The indictment must affirm every fact which it is necessary (446) to prove on the trial, and nothing else is required *Page 250 
to be proven; and, as in this case, the defendant cannot be found guilty under the act of 1819, for a violation of which he is indicted, unless the note which he passed purported to be issued by some bank within the United States or the territories thereof, it follows that such affirmations must be contained in the indictment; that the State of South Carolina is one of the United States we judicially know; she is a party to the Federal compact; we therefore want not a jury to inform us of that fact. But it must also appear that there is such a bank as the State Bank of South Carolina; of this fact we have no judicial knowledge. We must, therefore, derive our information from the affirmation of a jury, and that affirms the indictment to be true, and no more; and that states that the (447) defendant passed the note in question, which purported to be issued by the State Bank of South Carolina. There is no difference about the meaning of the word purport; it means substance, as appears upon its face, to every eye that reads, to use the language of Mr. Buller; but the question is, Does the word purport run through the whole description, and is that description satisfied if there be not such a bank? A note cannot be issued by the South Carolina Bank unless there be such a bank; neither can it appear to be issued by the South Carolina Bank unless there be such a one. The word purport stops at the word issued; all before, by the previous epithets is made false and fictitious; that which comes after is a reality. The word purporting relates to the foregoing falsities and fictions, and their criminality consists in the note not being what it appears to be, that is, a note issued by the South Carolina Bank. Had it been necessary to have shown that there was no such bank, the statement in the indictment would not have let in such evidence. There must have been an averment or clause that there was no such bank; this, though, is somewhat arguing in a circle.
The irregularity in forming the jury, if there was one, I think, was completely waived by the defendant; he shall not by consent of this kind, take a double chance. Upon the question of bailing the defendant after the allowance of an appeal, I am of the opinion that the conduct of the presiding judge was right. I think that the clause in the Constitution which declares that all prisoners shall be bailable by sufficient securities, unless for capital offenses where the proof is evident or the presumption great, relates entirely to prisoners before conviction; for although the words "where the proof is evident or the presumption great" relate to capital cases only, that is, to prisoners in capital cases, the meaning is evidently prisoners before conviction, for after conviction there is no such thing as proof and presumption; all is *Page 251 
certainty, and that the word prisoners must be understood alike (448) in each member of the sentence, that is, prisoners before conviction, and persons remain convicted of the offense, notwithstanding the appeal, for the appeal is for matter of law only; the facts remain unaffected by the appeal, unlike the cases of appeals for matters of fact as well as for matters of law, and where a new trial de novo is given, as on appeals from the county to the Superior Courts, or from a single justice to the county court, where the appeal annihilates the verdict and judgment both. It seems that in England the defendant, after conviction, cannot be bailed, even in petty misdemeanors, without the consent of the Attorney-General, not even after writ of error brought; but as a writ of error is not matter of right in a criminal case, but matter of favor extended by the Attorney-General, it is not so inconsistent to vest in him the power of assenting to bail; but here an appeal is matter of right. To compel the defendant, in all cases of appeal; even for the most petty misdemeanors, to go to jail but by permission of the prosecuting officer, would render useless the right of appeal; and an indiscriminate right of going at large, upon giving bail, after an appeal, would be rendering the criminal law a dead letter. We think the spirit of our law requires a middle course to leave it to the sound discretion of the judge before whom the appeal is taken. The court below will proceed to judgment.
TAYLOR, C. J., concurred with HENDERSON.