STATE v. WILL. WEDDINGTON.

*Removal of Cases to the Criminal Court of Mecklenburg—Const., Art. 4, §§ 2 and 30—The Code, §§ 196, 198, 1353—Comments of Counsel—Evidence—Variance.*

1. Under the Constitution, Art. 4, §§ 2 and 30, the Legislature can establish Criminal Courts, and under these sections the Legislature has, by ch. 63, Laws 1885, established a Criminal Court for Mecklenburg County, vested with all the criminal jurisdiction theretofore possessed by the Superior Court of said county.

2. Under ch. 63, Laws 1885, and *The Code,* §§ 196, 198, the Criminal Court of Mecklenburg has jurisdiction to try an indictment for murder removed into that Court from an adjacent county.

STATE *v.* WEDDINGTON.

3. In the Superior Court of Union it was ordered that this case be removed to the *Criminal* Court of Mecklenburg for trial, and that the Clerk of Union Superior Court certify the record to the *Superior* Court of Mecklenburg, "to the end that it may be there docketed, and *from there* certified to the Criminal Court," &c., for trial. A certified copy of the record was sent to the Superior Court of Mecklenburg, the Clerk docketed it, and then transmitted the same certified copy to the Clerk of the Criminal Court, attaching to it a certificate that it had been forwarded to him from the Clerk of Union: *Held*, that the record being duly certified. it was not material through how many hands it passed in *transitu*, and the Criminal Court had jurisdiction to try the case. So much of the order of removal as required the docketing of the case in the Superior Court of Mecklenburg was surplusage.

4. An indictment for murder charged that the killing was done with a piece of plank, and a witness for the State was allowed to testify (after objection) that he saw deceased wearing a brown wool hat at 4 P. M. before the night of the killing, and on the morning after the killing he found strands of fine brown wool upon a stick which was picked up at the place of the homicide (and with which there was evidence tending to prove the killing was done): *Held*, that the testimony was properly admitted.

5. If an indictment for murder charge that the killing was done with a piece of plank, and the proof is that it was done with a piece of iron, the variance is not necessarily fatal. The rule on this subject laid down in *State* v. *Gould*, 90 N. C., 658, is correct.

6. *The Code*, § 1353, does not forbid a prosecuting attorney to make such comments upon the testimony as would have been legitimate before the passage of the act. That section enlarges the privileges of the prisoner, but does not abridge the rights of the State's officers.

This was an INDICTMENT for murder, found in the Superior Court of UNION County, and moved to the Criminal Court of Mecklenburg County, where it was tried before *Meares, J.*, at December Term, 1888.

The defendant was found guilty of murder, and judgment was entered accordingly.

The material facts are stated in the opinion of the Court.

*Attorney General,* for the State.

*Mr. C. W. Tillett,* for the defendant.

AVERY, J.   Adopting the order in which the exceptions were discussed by counsel, we will consider, first, whether the Criminal Court of Mecklenburg County had jurisdiction. If that Court had no right to try the prisoner, it would be useless to extend our investigation further than is necessary to reach that conclusion.

The prisoner was indicted with two other defendants, who were found guilty as accessories, and have been sent to the State prison.   The following is a copy of the motion and the material portions of the order of removal, made in the Superior Court of Union County, as appears from the record:

"STATE *v.* WILL. WEDDINGTON, JOHN WEDDINGTON and SAM. REID—Murder.

" The defendants in this case, Will. Weddington, John Weddington and Sam. Reid, being charged in the bill of indictment with the murder of one John Pearce, and being brought to the bar of Court, in open Court, in their own proper persons, by J. P. Horn, Sheriff of Union County, and being represented by their counsel, Messrs. T. D. McAuley and J. J. Vann, move, upon affidavit, that the cause be removed from the county of Union to some adjacent county for trial, for reason assigned in an affidavit duly filed by them.   And thereupon, upon the motion of the defendants, based upon the said affidavit, it is ordered by the Court, 'that the said cause be *removed from the Superior Court of Union County to the Criminal Court of Mecklenburg County for trial.*   And it is further ordered, that the Clerk of this Court certify the record to the Superior Court of Mecklenburg County, to the end that it may be there docketed, and from there certified to the Criminal Court of Mecklenburg County, to the end that it may there be tried.'"

It is admitted that a duly certified copy of the case was forwarded by the Clerk of the Superior Court of Union County to the Solicitor of said Criminal Court, who handed it to the Clerk of the Superior Court of Mecklenburg County. The Clerk of the latter Court entered the case on the docket of the Superior Court of Mecklenburg, and annexed to the said copy of the record a certificate, that it had been forwardrd to him from the Clerk of the Superior Court of Union County, and transmitted it to the Criminal Court. The case was thereupon docketed in said Criminal Court, and, after one continuance, tried there. The motion in arrest of judgment for want of jurisdiction in said Criminal Court is upon the ground that the act creating the Court (ch. 63, Laws of 1885) does not confer upon it jurisdiction of any criminal offence committed outside of Mecklenburg County, even after removal, or, if the said act gives the right to try cases on removal from other counties at all, the jurisdiction of the Criminal Court does not attach till after the cases are certified to the Superior Court of Mecklenburg County, docketed there, and a new transcript of the record sent thence to said Criminal Court. The argument in support of the motion in arrest of judgment is predicated upon the idea that the power of the Criminal Court to try must depend upon the construction given to sections 4, 21 and 24 of the act establishing the Court. We think that the Court below properly refused the motion in arrest of judgment. The right of the General Assembly to establish Criminal Courts is derived from sections 2 and 30, Art. IV of the Constitution. There can be no doubt that, in the exercise of the power given in these sections, the General Assembly has created a Criminal Court, with general jurisdiction of all criminal offences that were cognizable, before the passage of that act, in the Superior Court of Mecklenburg County, and that the latter Court no longer has such general jurisdiction of criminal offences. *The Code* (sec. 196) provides that, " in

all·civil and criminal actions in the Superior and Criminal Courts, in which it shall be suggested, on oath or affirmation on behalf of the State or the traverser of a bill of indictment, &c., the Judge shall be authorized to order a copy of the record of said action to be *removed to some adjacent county for trial,*" &c. A subsequent section (198) provides that " when a cause shall be directed to be removed, the Clerk shall *transmit to the Court,* to *which the same is removed,* a transcript of the record of the case," &c. These sections empower the Judges of Superior and Criminal Courts to order the records to be sent to some *adjacent county,* not to any *specified Court,* but the clear implication is, that it would be sent to a Court having general jurisdiction of criminal offences in such adjacent county, and direct the Clerk of the Court, in which the order of removal is made, to send a transcript of the record to the Clerk of the Court to which, by the order, it is to be removed. There being nothing in the act establishing the Criminal Court that is, in our opinion, repugnant to the sections of *The Code* referred to, we hold that it has jurisdiction of this case.

It is admitted, as it also appears from the record, that the transcript was certified in proper form by the Clerk of the Superior Court that tried the prisoner. If duly certified, it was not material through how many or whose hands it passed in *transitu.* The Criminal Court had proper evidence that it was a record, and in that record was an order that could be interpreted and treated only as an order of removal to it for trial. The attached certificate of the Clerk of the Superior Court of Mecklenburg County did not impair or destroy the character of the paper as a record. That depended upon the certificate. The order of removal to the Criminal Court of Mecklenburg gave to that Court the right to try, so soon as the record of the case containing that order should reach its Clerk, duly authenticated, and so much of said order as required the case to be docketed in the Superior Court of Mecklenburg

must be treated as surplusage. The fact that it was so dock-
eted did not affect its authenticity as a record. No such
addition to the order, already sufficient, could affect the
power of the Criminal Court to try. The sections of the act
establishing the Court, cited by counsel as bearing upon the
extent of the jurisdiction conferred upon the Court, are not
in conflict with the provisions of *The Code*, and our construc-
tion of their meaning may be summarized as follows:

1. Section four, in effect, vests in the Criminal Court the
right to try any and all criminal offences committed within
Mecklenburg County, and which might have been tried in
the Superior Court of that county, and for the establishment
of the Criminal Court. · The word " originating " is evidently
used in the sense of " committed."

2. Section twenty-one makes it the duty of the Clerk of
the Superior Court of Mecklenburg County to transfer prop-
erly certified records of all indictments and all proceedings,
by *scire facias*, &c., then pending in said Court, to that estab-
lished by the act

3. Section twenty-four was evidently drawn without
adverting to provisions of *The Code*, and with the view of
giving to the new Court the right to try criminal causes not
already removed, but which might thereafter be removed
from other counties. The language is somewhat ambiguous,
but we see no reason why placing " on the docket of Meck-
burg and New Hanover counties" should not be construed
to refer to the dockets of the Criminal Courts having juris-
diction of criminal offences in those counties. especially when
considered in connection with sections 196 and 198 of *The
Code*.

The deceased, John Pearce, was a police officer, and, on
the night of May 12, 1888, had arrested one McMillan, in the
town of Monroe, for a criminal offence, and, while holding
McMillan by one arm, received a blow that fractured his

103—24

skull (making an aperture of less than a half inch in width) and caused his death. The deceased had pursued McMillan into a room, where a number of negroes were holding a festival, and there arrested him. On coming out of said house with his prisoner, deceased was surrounded by a large and turbulent crowd of negroes, who were making a great deal of noise at the time of the killing. The prisoner was in the crowd, and there was evidence tending to show that the prisoner, as well as a number of other negroes present, had declared, while deceased and McMillan were in the house, that the latter should not be arrested. On the morning next after the killing, "a piece of plank" was found in the immediate vicinity of the spot where deceased was killed, which was about three and one-half feet in length and six inches in width, and exactly three-fourths of an inch in thickness. It was further in evidence that at the very moment when the fatal blow was stricken a piece of iron was heard to fall upon the pavement, and immediately afterwards a piece of iron was found at the place which was some two and a half feet in length and one-half inch in thickness, having a sharp edge. The evidence was that the edges of the fracture on the top of the skull of deceased were sharply defined, as if made with a sharp instrument. The charge in the indictment was, that the killing was done with "a certain piece of plank." There was evidence tending to show that the deceased had been killed by the prisoner with the said plank—that the prisoner had had the piece of plank, or one very similar to it, only a few moments before the killing; but there was other evidence tending to show that he had dropped it about a half minute or a minute before the killing. There was other evidence tending to prove the killing by the prisoner. The theory upon which the defence was conducted was, that the prisoner did not do the killing, and that the fact of killing by prisoner was not proven.

The State then introduced one Gaither, who testified that on the morning after the killing he found the piece of plank in the street, near where the deceased had been struck, and that he walked around, using it for a walking-stick, for more than an hour, when he left it at the house of one Blakeley.

The State then introduced one Ferrill, who was allowed to testify, after objection on the part of the prisoner, that the plank in question came into his possession after it had been left at Blakeley's, and that on the morning of the Coroner's inquest he noticed several strands, like fine brown wool, which had been caught under some small splinters of the plank. The objection was overruled, and the prisoner excepted.

The witness was then asked by the counsel for the State, what sort of a hat the deceased was wearing on the night of the killing; to which question the witness answered that he did not know what sort of a hat he was wearing on the night of the killing, but he did know what kind of a hat he had on at four o'clock of the afternoon immediately previous to the killing. After objection by the prisoner, the witness was allowed to testify further, that at the hour mentioned (4 o'clock of the afternoon before the killing) the deceased was wearing a brown wool hat. The prisoner excepted.

The two first exceptions to the testimony are stated together, because, in fact, one exception might have been made to answer instead of two. The competency of the testimony admitted by the Court cannot be considered and passed upon intelligently, except as raising the question, whether the facts, that witness saw the deceased wearing a brown wool hat at 4 o'clock in the afternoon before the night of the killing, and that, on the morning after the killing, he found upon a stick that had been picked up where the killing was done, and with which there was evidence tending to show the fatal wound was inflicted, were relevant,

and tended to show that the killing was done by the prisoner with the plank.　We think that the testimony was properly admitted by the Court.　We cannot agree with the counsel for the prisoner, that if the evidence in this case shows that the killing was done with the piece of iron instead of with the plank, there would be a fatal variance.　"Where the instrument of death laid in the indictment and that proved are of the same nature and character, and the method of operation is the same, though the instrument is different, there is no variance." *State* v. *Gould*, 90 N. C., 658.　"And when the offence was charged to have been committed with a sharp instrument, and the evidence was that the wound was partly torn and partly cut, and was done with an instrument that was not sharp, it was held, that the charge in the indictment was proved, and the degree of sharpness was immaterial." *Rex* v. *Grounsell*, C. & P., 121.

The State introduced, as a witness, the colored man, Moses McMillan, who was in the grasp of the deceased at the time of killing.　He testified that he could not see who struck the blow, but that in the excitement following it he escaped, and that a short time afterwards he met the prisoner on the streets of Monroe, and that there was no one present but himself and prisoner, and then and there the prisoner said to witness: "Didn't I tell you I would relieve you from that man?　I got the damned son of a bitch."

The prisoner did not offer himself as a witness, nor did he introduce any evidence. One of the counsel for the State, in his argument to the jury, after repeating the testimony of McMillan, said: "Now, gentlemen of the jury, no one has contradicted the testimony of Mose McMillan, and you must accept it as the truth." Defendant's counsel took no exception to the remark at the time, nor was the attention of the Court called to it; but counsel afterwards excepted, on the ground that the remark of the Solicitor was, in effect, a comment on the fact that

the prisoner had not testified in his own behalf, and, therefore, such a gross abuse of privilege and invasion of the rights guaranteed to the prisoner by *The Code*, § 1353, that no presumption shall be created against him by his failure to testify, as to entitle him to a new trial, even though no objection was made to the language at the time. If the witness McMillan had testified to any fact that, by his evidence, appeared to be within the knowledge of others beside the prisoner and himself, it would not have been contended that counsel could not insist, before the jury, that he had not been contradicted, when no evidence had been offered for the prisoner. If such were the effect of the section referred to, the Solicitor, in this case, would not have been at liberty to contend, before the jury, that any one of the witnesses to the facts connected with the killing, or to any occurrence, witnessed also by the prisoner, was entitled to credence, because he had not been contradicted, lest the argument might suggest the idea to the jury that the law allowed the defendant the privilege of testifying and he had not availed himself of it. If no such right had been given to the prisoner, by law, counsel would have been free to comment upon the fact, that this witness was, as to declarations of the prisoner, not contradicted or impeached. When the rules of evidence were changed by the section mentioned in this respect, an important privilege was extended to defendants, guarded by the provision that a failure to exercise it should raise no presumption of guilt against them. But it was not the purpose, in enacting the law, to restrict the officer prosecuting for the State from making a comment upon the testimony that would have been legitimate before the passage of the act, and in which no direct reference was made to the right of the prisoner, or his failure to exercise it. The prisoner's personal privileges are enlarged by the provisions of the law.

The right of the State to conduct the prosecution according to the usual practice, through its officers, so as to aid the jury in arriving at the truth, was not intended to be, and is not abridged in consequence of his refusal to become a witness in his own behalf.

No error.                                                Affirmed.