STATE OF NORTH CAROLINA v. JAMES VERNON SMITH

No. 47

(Filed 17 June 1976)

**1. Jury § 7— ten peremptory challenges for State — error not prejudicial**
    Though there was a violation of G.S. 9-21(b) in allowing the State ten instead of nine peremptory challenges, the error was not

State v. Smith

prejudicial to defendant, particularly where defendant failed to object or otherwise bring the error to the attention of the court and also failed to exhaust his own peremptory challenges.

2. **Constitutional Law § 29; Jury § 5— excusal of jurors not challenged by either party**

Failure of the trial court to require formal challenges by the State before excluding 27 prospective jurors was not prejudicial error.

3. **Constitutional Law § 29; Jury § 5— excusal of jurors not challenged by State**

The trial court did not err in excusing six prospective jurors without formal challenge by the State where each of those jurors expressed serious reservations as to his ability to render an impartial verdict based solely on the evidence presented at trial.

4. **Constitutional Law § 29; Jury § 5— erroneous excusal of juror — no prejudice to defendant**

The erroneous excusal of a prospective juror does not entitle the adverse party to a new trial so long as there is no systematic exclusion and only those who are competent and qualified to serve are actually empaneled; this is especially so where the defendant fails to exhaust his peremptory challenges.

5. **Criminal Law § 87— leading questions — allowance discretionary**

Rulings by the trial judge on the use of leading questions are discretionary and reversible only for abuse of discretion.

6. **Criminal Law § 87— leading questions — guidelines for allowance**

Situations in which leading questions are permissible are when the witness is hostile or unwilling to testify, has difficulty in understanding the question because of immaturity, age, infirmity or ignorance, or where the inquiry is into a subject of delicate nature such as sexual matters, the witness is called to contradict the testimony of prior witnesses, the examiner seeks to aid the witness's recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, the questions are asked for securing preliminary or introductory testimony, the examiner directs attention to the subject at hand without suggesting answers, and the mode of questioning is best calculated to elicit the truth.

7. **Criminal Law § 169— hearsay testimony — no motion to strike — similar evidence admitted without objection**

Defendant waived the benefit of his objection to hearsay testimony where he made no motion to strike, requested no curative instructions, and elicited evidence of the same or similar import on cross-examination.

8. **Homicide § 4— first degree murder — premeditation and deliberation — definitions**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. Premeditation may be defined as thought beforehand for some length of time,

State v. Smith

and deliberation means an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design or to accomplish some unlawful purpose.

**9. Homicide § 18— premeditation and deliberation — circumstances to consider**

Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) want of provocation on the part of deceased, (2) conduct of defendant before and after the killing, (3) the dealing of lethal blows after deceased has been felled and rendered helpless, (4) the vicious and brutal manner of the killing, and (5) the number of shots fired.

**10. Homicide § 21— first degree murder — death by shooting — sufficiency of evidence**

Evidence in a first degree murder prosecution was sufficient to be submitted to the jury where it tended to show that two of defendant's companions quarreled with deceased when they took him home on the night of the shooting; an hour later, defendant and his two companions returned to deceased's home, enticed the unarmed victim to come outside, and then, without warning, opened fire upon him with a shotgun and defendant's .25 automatic pistol, discharging at least three shots and fatally wounding him with a shotgun; they immediately returned to defendant's trailer and defendant was driven to his father's home where he concealed the shotgun; and after learning of one of his companion's arrest, defendant told one witness to check his car for shells, ordered another witness to dispose of his .25 automatic pistol, and instructed both witnesses to say nothing of the events which had transpired, warning one of them that she, like the deceased, might be killed if she divulged any information to the investigating authorities.

**11. Criminal Law § 157— defense counsel's argument — inclusion in record on appeal**

The argument of defense counsel should be included in the record on appeal when the district attorney's argument is challenged.

**12. Criminal Law §§ 102, 116— statement that evidence uncontradicted — no comment on defendant's failure to testify**

Where contradictions in the State's evidence, if such existed, were not shown by the testimony of others or by cross-examination of the State's witnesses themselves, the prosecution was privileged to argue that the State's evidence was uncontradicted and such argument may not be held improper as a comment upon defendant's failure to testify. G.S. 8-54.

**13. Constitutional Law § 36; Homicide § 31— first degree murder — death penalty constitutional**

Imposition of the death penalty upon a conviction for first degree murder was not unconstitutional.

DEFENDANT appeals from judgments of *Wood, J.,* September 1975 Session, STOKES Superior Court.

Defendant was indicted in separate bills for murder and conspiracy. The first bill charges that on 24 January 1975 defendant feloniously, willfully, and of his malice aforethought, did kill and murder Lindsey Winfred Hall in Stokes County. The second bill charges that on 24 January 1975 defendant unlawfully, willfully, and feloniously conspired with Harold Linwood Jordan and William Brady Tilley to feloniously assault and inflict serious injury upon Lindsey Winfred Hall with firearms. The cases were tried together without objection.

The State's evidence tends to show that on 24 January 1975 James Vernon Smith, Brady Tilley, Willa Dean Hicks and Gail Bullins were drinking together at defendant's trailer in Stokes County. In the late afternoon they were joined by Larry Hodges, Harold Jordan and Lindsey Winfred Hall. Between 5:30 and 7:00 p.m. Willa Dean Hicks was taken home and was replaced by Julia Pruitt. Around 9 p.m. Larry Hodges went to bed with Gail Bullins in the back bedroom of defendant's trailer. Harold Jordan and Brady Tilley took Lindsey Winfred Hall home around 10:30 p.m. in Jordan's truck. Mrs. Hall heard the truck arrive, recognized it by its sound, and heard loud voices outside her trailer home. After the truck left Lindsey Winfred Hall entered his trailer home and told his wife that Harold Jordan wouldn't be coming there anymore. When Mrs. Hall asked why, he replied, "Didn't you hear us fighting?"

The State's evidence further tends to show that when Brady Tilley and Harold Jordan returned to defendant's trailer after taking Winfred Hall home, defendant James Vernon Smith went into the room where Larry Hodges and Gail Bullins were sleeping and asked to borrow Hodges' car. Hodges gave his keys to defendant and cautioned him not to wreck the car. The defendant, Harold Jordan and Brady Tilley thereupon left the trailer and at that time defendant had a .25 automatic pistol in his belt.

Larry Hodges' car was white and had a stripe down the side. Around 11:30 p.m. Mrs. Winfred Hall, who had not yet retired, observed car lights coming into the driveway of her trailer home. She observed that the car was white and appeared to have a stripe down the side. Someone blew the horn, "and it was a real funny sounding horn." She could not hear anything that was being said outside, but "it sounded like somebody was just barely in a whisper talking and a trunk lid

slammed. . . . It was mumbled-like voices in a whisper. . . . I could not tell how many people were there." When the horn was blown a second time, she awakened her husband and told him someone was outside. Lindsey Winfred Hall got up, looked outside, seemed to grow frightened, finally pulled on his pants and went outside. As he passed through the door Mrs. Hall heard the car backing out of the driveway and heard three shots. One bullet penetrated the wall in the bedroom where she was sitting. She immediately ran outside and found her husband lying on his back at the end of the driveway. When she reached him he said, "They shot me." He was taken to the hospital and pronounced dead on arrival. An autopsy revealed that death was caused by multiple gunshot wounds, apparently as a result of buckshot from a shotgun blast to the chest.

Defendant James Vernon Smith, Harold Jordan and Brady Tilley returned to defendant's trailer "somewhere around 11:30 p.m." Defendant asked Julia Pruitt to drive him to his father's house, which she did. There, he concealed a shotgun under the mattress of a bed. The following day, 25 January 1975, defendant learned that Brady Tilley had been arrested, whereupon he told Larry Hodges to inspect his car for shells. Hodges did so but found none. Defendant also told Hodges to "keep quite about it." Later in the day defendant gave the .25 automatic pistol to Julia Pruitt and told her to take it home. She took it to her home and concealed it in a closet. She saw defendant again on the night of 27 January 1975, and defendant wanted to know what she had told the investigating SBI agent. He warned her that the same thing that happened to Winfred Hall could happen to her if she said anything. Julia next saw defendant on 30 January 1975 when he told her to get rid of the .25 automatic pistol. She wrapped it in a paper bag and threw it in some bushes behind her home. Some weeks later she told SBI Agent Johnson about the pistol and, acting on the information she furnished, Agent Johnson recovered it.

The Larry Hodges vehicle, a white car with a stripe down the side, was driven to Mrs. Hall's trailer and the horn was blown. Mrs. Hall testified that the horn sounded like the one she heard the night her husband was killed.

Two shell casings were found on the ground near the Hall trailer. Markings on these shell casings were compared with the markings of the shells which had been test-fired in defendant's .25 automatic pistol. Based on similarity of the markings, SBI

Agent Hurst testified that in his opinion the two shell casings found near the Hall trailer had been fired by defendant's .25 automatic pistol.

Defendant Smith offered no evidence. Harold Jordan and Brady Tilley were granted separate trials.

The jury convicted defendant of (1) murder in the first degree and (2) conspiracy to commit a felonious assault with a firearm upon Lindsey Winfred Hall. He was sentenced to death for the murder and to imprisonment for ten years for the conspiracy. He appealed to the Supreme Court alleging errors discussed in the opinion.

*Clarence W. Carter and Stephen G. Royster, attorneys for defendant appellant.*

*Rufus L. Edmisten, Attorney General; Isaac T. Avery III, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

[1] Defendant first contends the trial court committed prejudicial error in allowing the State to challenge peremptorily ten prospective jurors in violation of G.S. 9-21(b) which provides that "[i]n all capital cases the State may challenge peremptorily without cause nine jurors for each defendant and no more." The record reveals that the court clerk was keeping the record of peremptories exercised by both the State and the defendant and, due to an erroneous count, informed the prosecution that the State had used five peremptory challenges when in fact it had used six. The State thereafter exercised four additional challenges when it was only entitled to three. Even so, prejudicial error is not shown and this contention cannot be sustained.

Although there was a violation of the statute in allowing the State ten peremptory challenges, under the facts of this case the error was not prejudicial to defendant. Defendant not only failed to object or otherwise bring the error to the attention of the court but also failed to exhaust his own peremptory challenges. This indicates he was apparently satisfied with the jury ultimately empaneled. Under these circumstances the error was harmless and too insignificant to require a new trial. *See State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975); *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sen-*

*tence reversed* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971). This assignment is overruled.

**[2]**   During the course of jury selection the trial court, pursuant to voir dire examination conducted by the State, or by the court itself, or both, excused twenty-seven prospective jurors without a formal challenge for cause by the State. Defendant first argues that such action by the court constitutes prejudicial error. In the alternative, he argues that even if the court did not err in excusing certain jurors without a challenge by the State, seven of the twenty-seven jurors excused were nevertheless improperly excluded upon an insufficient showing of cause for challenge. These contentions constitute defendant's second and third assignments of error.

G.S. 9-15(a) provides in pertinent part that during the selection of the jury "it shall not be considered by the court that any person is challenged as a juror until the party shall formally state that such person is so challenged." Relying on this statute defendant contends the trial court erred by excusing various jurors without a formal challenge by either party. We think not.

Matters relating to the conduct of a criminal trial are largely within the sound discretion of the trial judge so long as defendant's rights are afforded him. *See State v. Young,* 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Perry,* 277 N.C. 174, 176 S.E. 2d 729 (1970). "It has long been established in this State that it is the right and duty of the court to see that a competent, fair and impartial jury is empaneled and, to that end, the court, in its discretion, may excuse a prospective juror *without a challenge by either party.* [Citations omitted.]" (Emphasis added.) *State v. Atkinson, supra.* It is obvious that the trial court, in doing so here, was merely attempting to expedite the selection of the jury which, nevertheless, was so extensive that it covers nearly 150 pages of the record before us. Defendant interposed no objection to this procedure, *see State v. Atkinson, supra; State v. Ward,* 9 N.C. 443 (1823), and upon this record has failed to show any abuse of discretion with respect to the challenged conduct of the court. We hold, therefore, that the failure of the trial court to require formal challenges by the State before excluding these prospective jurors was not prejudicial error.

**[3]**   Likewise without merit is defendant's contention that the trial court, without formal challenge by the State, improperly

excused six prospective jurors without a sufficient showing of cause by the State. Defendant argues that, of the twenty-nine jurors excused by the court, these six were excused improperly because there was "no showing of extreme partiality or prejudice" on their part. Our examination of the record reveals, however, that in the course of the voir dire, the jurors who were excused by the court had expressed serious reservations regarding their ability to return a verdict of guilty because of (1) their relationships with the defendant or the murder victim, or (2) their inability to grasp the possibility that more than one person may be responsible for the same crime, or (3) their skepticism with respect to the sufficiency of circumstantial evidence to support a conviction in a capital case. "The trial judge is empowered and authorized to regulate and supervise the selection of the jury to the end that both defendant and the State receive the benefit of a trial by a fair and impartial jury." *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975). Thus it is that questions concerning the competency of a juror are within the sound discretion of the trial judge whose rulings thereon will not be disturbed on appeal absent abuse of discretion or error of law. *State v. Young, supra; State v. Wetmore*, 287 N.C. 344, 215 S.E. 2d 51 (1975); *State v. Vinson, supra; State v. Harris*, 283 N.C. 46, 194 S.E. 2d 796, *cert. denied* 414 U.S. 850, 38 L.Ed. 2d 99, 94 S.Ct. 143 (1973); *State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied* 409 U.S. 1043, 34 L.Ed. 2d 493, 93 S.Ct. 537 (1972); *State v. Johnson*, 280 N.C. 281, 185 S.E. 2d 698 (1972). We hold that the trial court in the instant case had ample reason, on its own motion, to excuse these jurors, each of whom expressed serious doubts as to his ability to render an impartial verdict based solely on the evidence presented at trial.

[4] Even if one or more of these jurors were improperly excused, which is not conceded, this error was not prejudicial. Defendant failed to object to any juror exclusion challenged by this assignment, and "it has been settled in this State since as long ago as *State v. Ward*, 9 N.C. 443, that an irregularity in forming a jury is waived by silence of a party at the time of the court's action. . . . 'He shall not by consent of this kind, take a double chance' on acquittal by the jury so selected or a new trial because of such irregularity in the selection." *State v. Atkinson, supra.* A criminal defendant has the right to an impartial jury but not necessarily to one of his choice. *State v. Allred*, 275 N.C. 554, 169 S.E. 2d 833 (1969). Thus the

erroneous excusal of a prospective juror does not entitle the adverse party to a new trial so long as there is no systematic exclusion and only those who are competent and qualified to serve are actually empaneled. This is especially so where, as here, the defendant fails to exhaust his peremptory challenges.

The same reasoning applies with equal force to defendant's argument that the court, on its own motion, should have excused one juror who stated that he would find it embarrassing to return a verdict of not guilty by reason of his previous relationship, not disclosed, with the district attorney. Defendant did not challenge this juror, for cause or peremptorily, although defendant at this point had several unused peremptory challenges. Thereafter, he stated that he was satisfied with the jury as then constituted. This fact alone belies defendant's belated attack upon the competency of this juror and renders harmless any error alleged in this respect.

Defendant has shown no abuse of discretion or error of law on the part of the trial judge in excusing, on his own motion, those prospective jurors whose exclusion constitutes defendant's second and third assignments of error. Likewise defendant has shown no prejudicial error in the court's failure to excuse the one juror he now contends should have been excused. These assignments are overruled.

Defendant's fourth assignment is grounded on his contention that the trial court improperly excused five prospective jurors by reason of their general opposition to capital punishment and without a showing that they were irrevocably committed before the trial began to vote against conviction regardless of the evidence. We find, however, that the record does not support defendant's position.

The record reflects that four of the jurors embraced by this assignment indicated on voir dire that their views regarding the death penalty were such that they could not make an impartial decision as to defendant's guilt or that, notwithstanding the evidence, they would be unable to return a verdict of guilty. These four jurors (Richard Moran, Daniel E. Fulk, Donald Gray Stone and Ernest Posey) were therefore properly excused. *See State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975) ; *State v. Bernard,* 288 N.C. 321, 218 S.E. 2d 327 (1975) ; *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975) ; *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974) ; *State v. Crowder,* 285 N.C.

State v. Smith

42, 203 S.E. 2d 38 (1974). Robert Bullins was excused by the court by reason of his apparent inability to convict upon circumstantial evidence in a capital case rather than as a result of his views on capital punishment. Excusal of this venireman for cause rested in the sound discretion of the trial judge. Moreover, defendant made no objection, did not exhaust his peremptory challenges, and has made no showing of prejudice. Defendant had no vested right to this particular juror, and when no systematic exclusion is shown defendant's right is only to reject jurors prejudiced against him. He has no right to select a jury prejudiced in his favor. *State v. Monk, supra.*

*Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), relied on by defendant, involved a systematic exclusion of *all* veniremen opposed to capital punishment by the *intentional* application of an *improper standard.* Not so in the case before us. Moreover, defendant here did not object to the exclusion of Robert Lee Bullins, failed to exhaust his peremptory challenges, and advised the court he was satisfied with the jury that was empaneled. "This is strong evidence that no juror was empaneled who was prejudiced against defendant. In fact, this record does not disclose a vestige of evidence that a juror was empaneled who was not qualified and competent to serve." *State v. Bernard, supra. See State v. Ward, supra.* For the reasons stated, defendant has shown no prejudicial error in the jury selection process and his fourth assignment of error is therefore overruled.

By his fifth assignment of error defendant contends the trial court erred in permitting the district attorney over objection to propound twelve leading questions to certain State's witnesses. Mrs. Hall, wife of the deceased, testified regarding her observations of the automobile which was driven into her yard shortly before her husband was shot, and related matters. In the course of this testimony the district attorney asked Mrs. Hall the following questions to which Exceptions 33, 34, 35 and 36 were taken:

1. "Q. Could you, was it close enough so the lights of the car were not exposed?

A. Yes, sir."

2. "Q. He [the deceased] was near what we might refer to as the side ditch?

A. Yes, sir."

3. "Q. Did the bullet come through at the time the shots were fired?

A. Yes, sir."

4. "Q. And it [the car] had a stripe down the side?

A. Yes, sir."

Mrs. Brenda Nance Oakley, a neighbor of the deceased, testified that sometime before midnight she heard three closely spaced shots, the first of which sounded the loudest. The district attorney then asked, but the witness did not answer, the following question to which Exception 39 was taken:

5. "Q. Louder than the other two?"

Gail Bullins testified she and defendant went to visit Julia Pruitt "a couple of days after" Mr. Hall was killed. In the course of her testimony she remembered Larry Hodges had a white car and the district attorney asked her the following questions to which Exceptions 41 and 42 were taken:

6. "Q. Well did you ask him—Let me ask you whether you welcomed the visits from the group—"

7. "Q. With a stripe down the side of it?

A. Yes."

Larry Hodges testified that between 9:00 and 9:30 p.m. he and Gail Bullins retired to a bedroom in defendant's trailer. Sometime later defendant and Brady Tilley came into the bedroom to borrow Hodges' car. Hodges gave them the car keys and a few minutes later heard the car start. Hodges stated that he didn't know exactly what time he heard the engine start and the district attorney then asked the following question to which Exception 43 was taken:

8. "Q. Was it around eleven o'clock when they came into the bedroom?

*    *    *    *

A. I don't know, . . . I would say . . . between ten-thirty and eleven, that is what I would guess but I don't know."

Peewee Smith, a Stokes County Deputy Sheriff, described the sound of the horn on Larry Hodges' car as "real faint."

The following exchange then occurred and is the basis for defendant's Exception 44:

> 9. "Q. Larry Hodges has testified on some occasion that the car was carried to the home of Mrs. Hall for the purpose of conducting some sort of an experiment?
>
> MR. CARTER [attorney for defendant]: Objection to the leading.
>
> MR. SCOTT [district attorney]: I was going to ask if he knows about that and if Larry was telling the truth about it.
>
> COURT: Overruled.
>
> MR. CARTER: Objection to testifying.
>
> COURT: Overruled. Go ahead.
>                                        EXCEPTION No. 44"

The witness Ravon Collins, a deputy sheriff, testified concerning the difference in appearance of a shotgun as the witness observed it on January 27 and April 21, 1975. He stated that on January 27 the barrel of the weapon was shiny with dark powder particles scattered through the barrel. On April 21 the barrel had a duller shine and the powder in the barrel appeared dry and lighter in color. The district attorney then asked the following question to which defendant's Exception 45 was taken:

> 10. "Q. Looking at it now has it visibly changed in condition since that time?
>
> MR. CARTER: Objection to the leading.
>
> COURT: Overruled
>                                        EXCEPTION No. 45
>
> A. Since that time it appears to have gotten a duller look down the barrel with the powder becoming lighter in color."

Lindsey Watkins, a Rockingham County Deputy Sheriff, testified that Ray Hall gave him two .25 caliber cartridge hulls and what appeared to be a copper jacket of a lead projectile, which items were found outside the victim's trailer on the morning of his death. Watkins and another deputy surrendered these

items to SBI Agent Terry Johnson on 27 January 1975. The following exchange then occurred:

11. "Q. And the ones that you turned over to Mr. Johnson were the same and identical ones turned over to you by Mr. Ray Hall?

A. Yes.

MR. CARTER: Objection to the leading.

COURT: Overruled.

EXCEPTION No. 46.

MR. SCOTT: Just saving a little time."

The final question encompassed by this assignment and alleged to be leading occurred during the testimony of Frederick Mark Hurst, Jr., an SBI agent. Agent Hurst testified regarding comparisons he made between the cartridge casings (State's Exhibit 10) found outside the victim's trailer and cartridge casings obtained by test-firing an identical type of ammunition from State's Exhibit 12, a .25 caliber pistol which previously had been placed in defendant's possession shortly before the victim was killed. The district attorney then asked the following question:

12. "Q. Have you ever seen two .25 automatic pistols of this type leave the same mark on the same extracted shell?

MR. CARTER: Objection to the leading.

COURT: Overruled.

EXCEPTION No. 47

A. As far as the individual characteristics, no, sir."

[5] Rulings by the trial judge on the use of leading questions are discretionary and reversible only for abuse of discretion. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225 (1967); *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6 (1965); *State v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353 (1953); *State v. Beatty,* 226 N.C. 765, 40 S.E. 2d 357 (1946); 1 Stansbury's North Carolina Evidence § 31 (Brandis rev. 1973). Defendant concedes this to be the general rule but contends the court abused its discretion to his prejudice in permitting the questions challenged by this assignment. This contention is without merit.

State v. Smith

**[6]**  Situations in which leading questions are permissible are summarized by Justice Branch, writing for the Court in *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974), as follows:

"The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth. [Citations omitted.]"

The twelve questions encompassed by this assignment fall within the enumerated guidelines and we perceive no abuse of discretion on the part of the trial judge with respect to any of them. Defendant's fifth assignment of error is overruled.

Defendant's sixth assignment of error is grounded on the contention that the trial court expressed an opinion as to the facts and displayed an attitude of partiality throughout the trial. We have examined the portions of the record embraced by this assignment, Exceptions 9, 21, 30 and 40, and find nothing which merits discussion. None of the complaints covered by these exceptions could have affected the outcome of the trial when measured by any reasonable standard. Defendant's sixth assignment of error is overruled.

**[7]**  Defendant next contends that the trial court erred in admitting certain hearsay testimony by the wife of the deceased. Mrs. Hall testified she heard Harold Jordan's truck pull up outside her trailer. Someone got out of the truck and then she heard loud voices. After the truck left, her husband knocked on the door, she unlocked it, and her husband entered the trailer. He paced back and forth through the kitchen and living room for five or six minutes before joining his wife in the bedroom. When

he came into the bedroom, he acted as if he were angry about something. She stated that he sat down on the bed, shrugged his shoulders, and said, "Well, Heavy [Harold Jordan] won't be coming down here any more." The following exchange then occurred:

"MR. SCOTT: Heavy won't be coming any more?

A. That is what he said.

MR. SCOTT: Anything else?

A. I asked why and he said, didn't you hear us fighting, and I said, no, I had the television on and he said, you could not hear us fighting? He said they wanted to go and rob a place—

MR. CARTER: Objection to what he said, your Honor.
EXCEPTION NO. 32

(Questions continued by District Attorney Scott:)

MR. SCOTT: Don't say what they wanted him to do. That was about it, wasn't it?

A. Yes, sir."

Failure by the court to exclude as hearsay the testimony of Mrs. Hall constitutes defendant's seventh assignment of error.

It is not clear whether defendant's objection "to what he said" (Exception No. 32) was directed only to the statement "he said they wanted to go and rob a place" or, in addition, was intended to embrace the statement "he said, didn't you hear us fighting, and I said, no, I had the television on and he said, you could not hear us fighting?" In any event, Mrs. Hall had twice stated without objection that her husband asked if she could not "hear us fighting," and the objection was apparently triggered by her final statement regarding a robbery. Thus the thrust of the objection was addressed to the statement regarding a robbery rather than the statement regarding a fight. The district attorney apparently interpreted defendant's objection in this manner for he admonished the witness, "Don't say what they wanted him to do."

Nevertheless, it seems clear that the testimony in question was offered to show the truth of the matters asserted—that a

fight had erupted among the deceased and the persons who had driven him home. This testimony was therefore hearsay and should have been excluded. 1 Stansbury's North Carolina Evidence § 138 (Brandis rev. 1973), and cases there cited.

Even assuming, however, that defendant's objection and Exception No. 32 embraced Mrs. Hall's testimony concerning her husband's statement regarding a fight, the record reflects that defendant neither moved to strike Mrs. Hall's answer nor requested the court to instruct the jury to disregard it. Such silence in the face of the district attorney's instructions to Mrs. Hall—"Don't say what they wanted him to do"—indicates defendant was satisfied with that admonition concerning the robbery statement and regarded as harmless that portion of the testimony which referred to a fight.

The record also reveals that defendant elicited testimony concerning the fight during his cross-examination of Mrs. Hall. The evidence in the record is in narrative form but it is evident that the questions on cross-examination were general in nature and tended to amplify and reiterate, rather than explain and impeach, the testimony concerning a fight which Mrs. Hall had previously related on direct examination. The general rule is that when evidence is admitted over objection and the same evidence is thereafter admitted without objection, the benefit of the objection is lost. *State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975); *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973). The absence of a motion to strike or a request for curative instructions, coupled with the fact that defendant elicited evidence of the same or similar import on cross-examination, waived the benefit of the objection. Even so, we have examined the record in its entirety and conclude that any error in the admission of this evidence was harmless beyond a reasonable doubt. We see no reasonable possibility that a different result likely would have ensued had the challenged evidence been excluded. *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963); *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Defendant's seventh assignment of error is overruled.

By his eighth assignment of error, defendant contends the trial court erred in denying his motion to dismiss the charge of murder in the first degree. More particularly, he argues

that there was insufficient evidence of premeditation and deliberation to carry the first degree charge to the jury.

[8]   Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. McCall,* 289 N.C. 512, 223 S.E. 2d 303 (1976) ; *State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296 (1976) ; *State v. Patterson,* 288 N.C. 553, 220 S.E. 2d 600 (1975) ; *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971) ; *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65 (1970), *cert. denied* 404 U.S. 840, 30 L.Ed. 2d 74, 92 S.Ct. 133 (1971). "Premeditation may be defined as thought beforehand for some length of time. 'Deliberation means . . . an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design . . . or to accomplish some unlawful purpose. . . .' [Citation omitted.]" *State v. Davis, supra.*

[9]   Ordinarily, premeditation and deliberation are not susceptible of direct proof and usually must be established by proof of circumstances from which premeditation and deliberation may be inferred. *State v. Davis, supra; State v. Patterson, supra; State v. Buchanan,* 287 N.C. 408, 215 S.E. 2d 80 (1975) ; *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975) ; *State v. Van Landingham, supra; State v. Walters,* 275 N.C. 615, 170 S.E. 2d 484 (1969) ; *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769, *cert. denied* 368 U.S. 851, 7 L.Ed. 2d 49, 82 S.Ct. 85 (1961). "Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) Want of provocation on the part of the deceased [citation omitted] ; (2) the conduct of defendant before and after the killing [citation omitted] ; (3) the dealing of lethal blows after deceased has been felled and rendered helpless [citation omitted] ; (4) the vicious and brutal manner of the killing [citation omitted] ; (5) the number of shots fired [citation omitted]." *State v. Davis, supra; accord, State v. Van Landingham, supra.*

[10]   In our opinion the evidence in this case gives rise to these permissible inferences: (1) Tilley and Jordan quarreled with Hall when they took him home on the night of the shooting; (2) an hour later, defendant, Tilley and Jordan returned to Hall's home, enticed the unarmed victim to come outside and then, without warning, opened fire upon him with a shotgun and defendant's .25 automatic pistol, discharging at least three

shots and fatally wounding him with the shotgun; (3) they immediately returned to defendant's trailer and defendant was driven to his father's home where he concealed the shotgun; (4) after learning of Tilley's arrest defendant told one witness to check his car for shells, ordered another witness to dispose of his .25 automatic pistol, and instructed both witnesses to say nothing of the events which had transpired, warning one of them that she, like the deceased, might be killed if she divulged any information to the investigating authorities.

Considering the evidence in the light most favorable to the State, and giving the State the benefit of all reasonable inferences arising therefrom, we are of the opinion that the evidence was sufficient to permit, but not require, the jury to find that defendant, after premeditation and deliberation, formed a fixed purpose to kill Mr. Hall and thereafter accomplished that purpose. Thus the charge of first degree murder was properly submitted to the jury. *See State v. Davis, supra; State v. Van Landingham, supra; State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970) ; *State v. Walters, supra.* This assignment cannot be sustained.

Under his ninth assignment of error defendant lists fifteen excerpts from the district attorney's argument to the jury as improper and contends the trial court erred when it failed to censure, *ex mero motu,* these alleged improprieties and give appropriate curative instructions to the jury. We discuss only excerpts Nos. 1, 2, 4, 6, 8, 9, 14 and 15, all of which allegedly violate G.S. 8-54. The others are too innocuous to require discussion.

G.S. 8-54 in pertinent part provides:

> "In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses, or misdemeanors the person so charged is, at his own request, but not otherwise, a competent witness, but his failure to make such request shall not create any presumption against him."

Defendant offered no evidence. Many witnesses were examined on behalf of the State. From time to time throughout his jury argument, the district attorney argued: (1) That defendant "would have you believe that he did not participate at all"; (2) that Mrs. Hall "was on the stand for a considerable time

and nobody pointed a finger of accusation at her, not even on cross-examination"; (3) that, referring to the victim, "the evidence is uncontradicted, bear that in mind, that he not only didn't have a weapon, there was not one in his house"; (4) that "this testimony is uncontradicted as is every bit of the State's evidence"; (5) that "there is not a scintilla of evidence from any source that anybody was ever on the scene except Brady Tilley and Harold Jordan and J. V. Smith"; (6) that, referring to the testimony of Julia Pruitt, "J. V. left there with the automatic, the pistol stuck in his belt, and ladies and gentlemen, throughout this thing I ask you to remember that this evidence is uncontradicted"; (7) that "Brady Tilley and Harold Jordan are still there and then the uncontradicted evidence is that the group sat down there at the table and they were strangely quiet"; and finally, (8) that "I ask you to decide the case on the evidence that you have before you and ask that you remember that it is uncontradicted." Defendant contends the quoted remarks constituted improper comment on his failure to testify, tended to accentuate the significance of his silence, and that the failure of the court *on its own motion* to censure such argument and give curative instructions was prejudicial error requiring a new trial.

[11]   We note at the outset that defense counsel did not object to the remarks at the time nor was the attention of the court called to them. Counsel afterwards excepted when he prepared the record on appeal. We further note that defendant, having offered no evidence, had the closing argument to the jury. This afforded counsel an opportunity to attack the credibility of the State's witnesses and to answer effectively the remarks of the prosecuting attorney. The argument of defense counsel is not contained in the record on appeal, as it should be when the district attorney's argument is challenged, *State v. Miller,* 288 N.C. 582, 220 S.E. 2d 326 (1975), but it is reasonable to assume that counsel fully utilized that opportunity.

At common law, in both England and America, parties were not competent witnesses and were not permitted to testify. When that barrier was removed in this jurisdiction in 1881 by the enactment now codified as G.S. 8-54, it was provided that failure of the accused to utilize the privilege to testify should not "create any presumption against him." *State v. Walker,* 251 N.C. 465, 112 S.E. 2d 61, *cert. denied* 364 U.S. 832, 5 L.Ed. 2d 58, 81 S.Ct. 45 (1960). "When the rules of evidence were

changed by the section mentioned in this respect, an important privilege was extended to defendants, guarded by the provision that a failure to exercise it should raise no presumption of guilt against them. But it was not the purpose, in enacting the law, to restrict the officer prosecuting for the State from making a comment upon the testimony that would have been legitimate before the passage of the act, and in which no direct reference was made to the right of the prisoner, or his failure to exercise it. The prisoner's personal privileges are enlarged by the provisions of the law. The right of the State to conduct the prosecution according to the usual practice, through its officers, so as to aid the jury in arriving at the truth, was not intended to be, and is not abridged in consequence of his refusal to become a witness in his own behalf." *State v. Weddington,* 103 N.C. 364, 9 S.E. 577 (1888) ; *accord, State v. Winner,* 153 N.C. 602, 69 S.E. 9 (1910).

In *State v. Hooker,* 145 N.C. 581, 59 S.E. 866 (1907), exception was taken to the prosecuting attorney's comment that "none of the evidence as testified to by the State's witnesses has been contradicted, and no one had said that it was not true." Held: "This could not be taken as criticism upon the failure of the defendant to put himself upon the stand." Although the trial judge refused to stop the solicitor's argument, he charged the jury that defendant's failure to take the stand could not be considered to his prejudice and if the jury had understood the solicitor as meaning to comment on that fact, the comment should be disregarded. Here, we note parenthetically, there was no objection to the prosecutor's argument. Moreover, except for a small excerpt relating to the seventh assignment of error, the charge of the court is not set out in the record. Where the charge is not in the record it will be presumed that the court charged correctly *on all phases* of the case with respect to both the law and the evidence. *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363 (1965) ; *State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781 (1961). Portions of the charge not brought forward are deemed without error. *State v. Sears,* 235 N.C. 623, 70 S.E. 2d 907 (1952) ; *State v. Brown,* 226 N.C. 681, 40 S.E. 2d 34 (1946). In fact, the record contains a stipulation that no contention is made that error was committed in the charge.

Referring to G.S. 8-54, Chief Justice Stacy, writing for the Court in *State v. Tucker,* 190 N.C. 708, 130 S.E. 720 (1925), said:

> "In passing, we observe, however, that this statute does not restrict the prosecuting attorney from making such comments upon the evidence and drawing such deductions therefrom as would have been legitimate before the passage of the act, for, while enlarging the rights of the defendants, the statute did not abridge the privileges of the prosecution."

[12]    So it is here. Contradictions in the State's evidence, if such existed, could have been shown by the testimony of others or by cross-examination of the State's witnesses themselves. Thus the prosecution was privileged to argue that the State's evidence was uncontradicted and such argument may not be held improper as a comment upon defendant's failure to testify. *State v. Walker, supra; State v. Tucker, supra; State v. Weddington, supra.* See Annotation: Comment or Argument by Court or Counsel that Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify, 14 A.L.R. 3d 723 (1967), where numerous cases on the subject are collected and discussed. While the authorities are divided, many cases support the conclusion that a bare statement to the effect that the State's evidence is uncontradicted is not an improper reference to the defendant's failure to testify. *State v. Winner, supra,* and *State v. Weddington, supra,* are cited in support of this view. Defendant's ninth assignment of error is overruled.

By his tenth assignment, defendant contends that the trial court erred in denying his motion to set the verdict aside in that there was insufficient evidence to support a finding of premeditation and deliberation on the part of defendant. Since we have previously considered this contention in defendant's eighth assignment of error, it is overruled without further discussion.

[13]    Defendant's final contention, that imposition of the death penalty is constitutionally impermissible, has been considered and rejected by this Court in numerous recent decisions. *State v. Warren,* 289 N.C. 551, 223 S.E. 2d 317 (1976); *State v. McCall, supra; State v. Davis, supra; State v. Williams,* 289 N.C. 439, 222 S.E. 2d 242 (1976); *State v. Alford,* 289

N.C. 372, 222 S.E. 2d 222 (1976). We adhere to the views expressed in these cases. Defendant's eleventh assignment is therefore overruled.

We allowed defendant's motion to bypass the Court of Appeals on his conviction of conspiracy to commit felonious assault. Defendant has brought forward no assignment of error specifically directed to this conviction. Even so, we have carefully considered the entire record and find no reason in law to disturb the verdict and judgment on the conspiracy charge.

In the trial and judgments below, we find

No error.