STATE OF NORTH CAROLINA v. JIMMY REID

No. COA09-1292

(Filed 18 May 2010)

**1. Appeal and Error— preservation of issues—constitutional issue not raised at trial**

Defendant did not preserve for appellate review his argument that the trial court erred by failing to dismiss a charge of incest because the relevant statute was overbroad. Defendant did not raise this constitutional issue at trial.

**2. Appeal and Error— preservation of issues—issue not raised at trial—failed to make offer of proof**

Defendant did not preserve for appellate review his argument that the trial court erred in sustaining the prosecution's objections to defendant's cross-examination of the prosecuting witness. Defendant did not assert any constitutional claims at trial and failed to make any specific offer of proof when the trial court sustained the objections. Moreover, even if defendant had preserved this issue, he failed to show that the trial court abused its discretion.

---

**STATE v. REID**

[204 N.C. App. 122 (2010)]

## 3. Constitutional Law— right to self-representation—no error—issue not preserved for appellate review

The trial court did not err by allowing defendant to represent himself because defendant's actions did not reflect mental illness, delusional thinking, or a defendant who lacked the mental capacity to conduct his trial defense unless represented. Furthermore, defendant did not preserve for appellate review his argument that he was denied his constitutional right to represent himself and present his defense because the trial court allowed jailers to seize defendant's legal papers at night when he returned to jail.

Appeal by defendant from judgment entered 30 January 2009 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 24 February 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for the State.*

*M. Alexander Charns for defendant.*

BRYANT, Judge.

Defendant Jimmy Reid was indicted on one count each of second-degree rape and incest. During the 20 January 2009 criminal session of Guilford County Superior Court, a jury found him guilty of both charges. The trial court sentenced defendant to 125 to 159 months on the second-degree rape charge and 19 to 23 months on the incest charge. The trial court also ordered defendant to register as a sex offender and be subject to satellite-based monitoring for the rest of his life. Defendant appeals. As discussed below, we find no error.

*Facts*

The evidence tended to show the following. C.H. had been defendant's step-daughter since defendant married·her mother, L.R., in 1998. C.H. testified that she had a good relationship with defendant until she was sixteen, when he made a sexually suggestive comment to her. In 2007, C.H. got a rose tattoo near her waistline and defendant became angry about it, telling C.H. the tattoo was "drawing attention to [her] ass." Defendant again made sexual comments to C.H.

On 26 February 2008, L.R. was at work and C.H., then age nineteen, was in her bedroom. Defendant came into the room wearing only shorts and carrying a towel. Defendant told C.H. he was going to punish her for the tattoo drawing his attention to her. He straddled

C.H. on her bed, pulled her legs apart, and told her that they could "do it the hard way or the easy way." C.H. struggled and pleaded with defendant to stop, but he had vaginal intercourse with her. Afterwards, defendant left C.H.'s room and she went to her boyfriend's house to take a shower. A few hours later, C.H. told her mother what had happened, and C.H. was taken to the police department to make a report and to the hospital for an examination.

Following a lengthy pre-trial hearing, defendant was allowed to represent himself during the trial with court-appointed standby counsel. He did not present evidence but did cross-examine the State's witnesses. During closing arguments, defendant admitted having sex with C.H. but claimed it was consensual.

---

Defendant made nine assignments of error which he brings forward in three arguments to this Court: that the trial court erred in (I) failing to dismiss the incest charge because the relevant statute is overbroad, (II) sustaining the prosecution's objections to his cross-examination of C.H., and (III) allowing him to represent himself when he was mentally ill, or, in the alternative, allowing jailors to seize his legal papers when he returned to jail at night during the trial. After careful review of defendant's arguments and the record, we find no error.

*I*

**[1]** Defendant first argues the trial court erred in failing to dismiss the incest charge against him, contending that N.C. Gen. Stat. § 14-178 is constitutionally overbroad. Because defendant did not preserve this issue for appellate review, we do not consider his argument and dismiss his related assignments of error.

"[A] constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) (citations omitted). Defendant was charged under N.C.G.S. § 14-178, which provides in pertinent part:

(a) Offense.—A person commits the offense of incest if the person engages in carnal intercourse with the person's (i) grandparent or grandchild, (ii) parent or child or stepchild or legally adopted child, (iii) brother or sister of the half or whole blood, or (iv) uncle, aunt, nephew, or niece.

N.C.G.S. § 14-178 (2009). In his brief, defendant argues that the statute is overbroad because it would criminalize sexual encounters

between consenting adults even after the familial bonds that linked them had been dissolved by death or divorce. However, our thorough review of the record indicates that defendant did not raise the constitutional issue of overbreadth at trial.

In a written pretrial motion, defendant moved to dismiss the incest charge, stating in pertinent part:

> Now back to the Incest Indictment where Perjury was committed in order to obtain an Indictment by the Grand Jury. The lead Detective, Prosecutor and Magistrate All was [sic] complicity [sic] in Perjury when they implied that the plaintiff was a minor with evidence in hand shown [sic] plaintiff's age was 19 going on 20 years old and not a minor like 14-27.3(A) reguest [sic] Plaintiff or victim must be.

This motion raises no constitutional issue and instead appears to allege perjury before the grand jury and indicates defendant's confusion about the statute under which he was charged for the crime of incest. This motion mentions the "Incest Indictment," but then cites N.C. Gen. Stat. § 14-27.3, which concerns second-degree rape, a charge for which defendant was also indicted and convicted. Section 14-27.3 does not mention age of the victim. Defendant may have intended to refer N.C. Gen. Stat. § 14-27.7, entitled "Intercourse and sexual offenses with certain victims; consent no defense", which provides, in pertinent part:

> (a) If a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, or if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony. Consent is not a defense to a charge under this section.

N.C.G.S. § 14-27.7 (2009). However, defendant was not charged under this statute.

During the hearing on pretrial motions, defendant moved to allow his court-appointed counsel to withdraw and to be allowed to represent himself. When the trial court asked defendant why he wished to represent himself, he launched into a rambling explanation about his counsel colluding with the district attorney in refusing to meet with

defendant "because they knew that the evidence that I had to show would get both of my charges dismissed, both indictments dismissed." Defendant then put forward the same argument from his written motion, as quoted above, that there was perjury before the grand jury about the age of C.H. Defendant was again apparently confused about the statute under which he was charged since he stated "the person must be a minor when you play a parental role then the person must be a minor . . . ." This language is similar to that quoted above from N.C.G.S. § 14-27.7 but does not appear in N.C.G.S. § 14-178. Again, defendant raised no constitutional issue but focused only on the "problem indictment."

Later in the hearing, when the trial court asked defendant to sum up his concerns with his court-appointed counsel, defendant responded that the indictments "[d]oesn't [sic] legally qualify according to the constitution." Although defendant mentioned the constitution at this point, it was in connection with his concern about the possibility that someone committed perjury before the grand jury by claiming C.H. was a minor. At no point did he allege overbreadth of N.C.G.S. § 14-178 or even mention that statute.

Defendant also moved to dismiss at the close of all evidence based on insufficiency of the evidence and renewed the motion after the jury charge. Defendant did not mention overbreadth or make any other constitutional argument. The trial court denied those motions. Because defendant did not raise his constitutional arguments in the trial court, they are not properly before us, and we dismiss these assignments of error.

## II

**[2]** Defendant next argues the trial court erred in sustaining the prosecution's objections to his cross-examination of C.H. Because defendant failed to preserve this issue for our review, we dismiss his argument and related assignments of error.

"[A] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. 8C-1, Rule 611(b) (2009). However, "the trial court has the duty to ensure that time is not wasted in useless and repetitive presentation of the evidence." *State v. Long*, 113 N.C. App. 765, 771, 440 S.E.2d 576, 579 (1994). The scope of cross-examination is left to the sound discretion of the trial court. *State v. Forte*, 360 N.C. 427, 442, 629 S.E.2d 137, 147, *cert. denied*, 549 U.S. 1021, 166 L. Ed. 2d 413 (2006). "[A]ny 'ruling committed to a trial court's discretion is to be accorded great defer-

ence and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.' " *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 832 (1985)). Finally, "[i]n order for this Court to rule on the trial court's exclusion of evidence, a specific offer of proof is required unless the significance of the excluded evidence is clear from the record." *Long*, 113 N.C. App. at 768, 440 S.E.2d at 578 (citing N.C. Gen. Stat. § 8C, Rule 103(a)(2) (1992) and *State v. Simpson*, 314 N.C. 359, 334 S.E.2d 53 (1985)).

Defendant bases this argument on his fifth and sixth assignments of error. Both assignments of error assert that defendant's right to present a defense under the federal and state constitutions was violated. Assignment of error five refers to "objections to defendant's questions to witnesses and to his closing argument." Assignment of error six refers to "objections to defendant's questions to his wife about her previous occupation and drug usage. [sic] argument." In his brief, defendant explains that he wished to cross-examine C.H. about her relationship and feelings toward him and the "complicated family dynamics of a stepfamily" to show that C.H. had a motive to lie about being raped. In addition, he wished to cross-examine C.H. and L.R. about L.R.'s alleged drug use to show that L.R. did not "perceive events accurately."

We first note that defendant did not assert any constitutional claims in the trial court and failed to make a specific offer of proof when the trial court sustained the State's objections. Therefore, defendant has failed to preserve this issue for our review. *See Hunter*, 305 N.C. at 112, 286 S.E.2d at 539; *Long*, 113 N.C. App. at 768, 440 S.E.2d at 578. Further, even if defendant had preserved this issue, he fails to show any abuse of the trial court's discretion.

During his closing argument, the trial court sustained several objections by the State when defendant tried to discuss his wife "using [his] kids against" him and mentioned his wife's "nasty letters." The transcript reveals that although the trial court sustained the objections, defendant continued to talk about the letters. Likewise, when the trial court sustained an objection to defendant talking about C.H. allegedly holding a knife to his throat, defendant had already twice before mentioned this allegation. Our close review of the trial transcript shows that the trial court gave defendant, acting *pro se*, wide latitude in both his cross-examinations and closing argument. Defendant repeatedly and extensively discussed his theory that C.H. and L.R. were not being truthful and were out to get him. The

trial court also allowed defendant to cross-examine C.H. about their relationship and her alleged dislike of defendant. The trial court acted appropriately and within its discretion in preventing the waste of time by needlessly repetitive testimony. *Long*, 113 N.C. App. at 771, 440 S.E.2d at 579. Defendant's assignments of error five and six are dismissed.

*III*

**[3]** In his final argument, defendant contends that "the trial court erred by allowing [him] to represent himself when the pre-trial hearing and the trial [were] filled with indications that defendant was mentally ill and not able to represent himself, or, in the alternative, for allowing jailers to seize defendant's legal papers at night when he returned to jail denying him the right to represent himself." We disagree. Defendant failed to properly preserve his alternative argument for appellate review and we dismiss defendant's assignment of error seven. As to defendant's assignment of error eight, regarding his alleged mental illness, we find no error.

Defendant begins the third argument in his brief with an extended assertion about the alleged ineffectiveness of his court-appointed counsel prior to her withdrawal and appointment as his standby counsel. However, defendant did not assign error on this point and thus, his ineffective assistance of counsel argument is not before us.

Defendant then acknowledges that the trial court conducted the review required by N.C. Gen. Stat. § 15A-1242 before allowing him to proceed *pro se*, but contends that the trial court was "under the misapprehension that [it] couldn't force [him] to have a court-appointed attorney." Defendant states that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Indiana v. Edwards*, —— U.S. ——, ——, 171 L. Ed. 2d 345, 357 (2008). As defendant notes, *Edwards* involved a defendant who had been previously ruled incompetent to stand trial twice and who had diagnosed mental illness including schizophrenia. *Id.* at ——, 171 L. Ed. 2d at 351. Defendant agrees that his case is factually distinguishable from *Edwards*, but asserts that his pretrial motions and claims indicated delusional thinking and mental illness. We disagree.

As discussed above, defendant's written motions and some of his arguments during the pretrial hearing indicate that he was confused

about what elements were required to be proved under various statutes. However, this is not clear evidence of delusional thinking but rather of the confusion one might expect of a layperson grappling with our State's complicated statutes relating to sexual offenses. The transcript reveals that defendant formed a coherent theory of his case: that he and C.H. engaged in consensual sex rather than rape, and that C.H. lied about consenting because she disliked him. Defendant stuck to this theory throughout the trial and attempted to find support for it during his cross-examination of the State's witnesses. Defendant then summed up his theory and argued it during his closing statement. Defendant was able to file a written motion to dismiss and to renew that motion appropriately at the close of all evidence. He was able to make the decision not to testify, which would have opened him up to cross-examination and attacks on his credibility. Given the evidence against him, specifically medical evidence and testimony from C.H. supporting the rape charge and witness testimony about his difficult relationship with C.H., defendant appears to have made a strategic decision to admit sexual contact but contest rape. This decision may have been unsuccessful and may even have been ill-advised, but it does not reflect mental illness, delusional thinking, or a defendant who "lacks the mental capacity to conduct his trial defense unless represented." *Id.* at ——, 171 L. Ed. 2d at 355. The trial court did not err in allowing defendant to represent himself after complying with the requirements of N.C.G.S. § 15A-1242. In fact, the trial court conducted an extensive inquiry regarding defendant's ability represent himself.

As to defendant's alternative argument, that defendant was denied his constitutional rights to represent himself and present his defense because jailers seized his legal papers, we conclude that he did not preserve this issue for appellate review. At trial, defendant made no motion or objection on constitutional grounds before the trial court. *Hunter*, 305 N.C. at 112, 286 S.E.2d at 539.

In any event, defendant cannot show error. The transcript reveals that, outside the presence of the jury at approximately 9 a.m. on 23 January 2009, defendant reported to the trial court that someone at the jail had "ambushed" him that morning and taken his legal papers. The trial court asked defendant to look through his materials to insure that he had all his papers. Defendant stated that he did have everything. The trial court went further and asked defendant twice more to make sure he had everything he needed and that his papers were in order; defendant said he was ready to proceed. After the jury

was brought in, the trial court again asked defendant if needed a few minutes to get organized and when defendant said he was unsure, the trial court called a ten minute recess so that defendant could further prepare himself. The trial court then confirmed that defendant was ready to proceed. In his brief, defendant contends that he was prevented from preparing his defense and compares the incident to "the Government tak[ing] a lawyer's work product for the evening, preventing him or her from preparing for the next day's court examinations and arguments[.]" Defendant's legal papers were not taken overnight; even if someone at the jail had "seized" his papers that morning, defendant acknowledged to the trial court that he had everything back at 9 a.m. At no point did defendant suggest that he was unprepared for court or hindered in any way by the incident. In context, defendant appears to have been concerned with being "ambushed." This interpretation is further supported by his reference to the incident during the sentencing hearing, when defendant stated that he had been "attacked" during the incident. When defendant raised this issue, both at trial and during sentencing, the trial court made a point of clarifying that defendant had not been physically attacked, had access to his materials during the evening in his cell, had all his materials when he arrived in court, and was organized and prepared to proceed. Defendant does not show that he was prevented from representing himself or presenting his defense.

Dismissed in part; no error.

Judges STROUD and BEASLEY concur.