STATE OF NORTH CAROLINA v. ROBERT MITCHELL FOUST

No. COA11-1067

(Filed 17 April 2012)

**1. Evidence—prior crimes or bad acts—relevant—probative value not outweighed by prejudice**

The trial court did not commit plain error in a first-degree rape case by introducing evidence of defendant's prior altercation with the victim's friend and a name-calling incident. The altercation and the name-calling incident were relevant to demonstrate the victim's state of mind and the probative value of the evidence was not outweighed by any prejudice to defendant.

**2. Appeal and Error—preservation of issues—constitutional issue not raised at trial—no offer of proof**

Defendant failed to properly preserve for appellate review his argument that the trial court erred in a first-degree rape case by sustaining the State's objection to defendant's cross-examination of a police detective. Defendant's failure to raise the constitu-

tional claim with the trial court and his failure to present evidence of what the detective's testimony would have been constituted a failure to preserve these issues for review.

### 3. Criminal Law—prosecutor's closing argument—statement not inflammatory

The trial court did not err in a first-degree rape case by failing to intervene *ex mero motu* in the State's closing argument. The State's comparison of defendant to a hunter or beast in the field was not a characterization of defendant himself, and the analogy was limited to non-inflammatory statements.

### 4. Criminal Law—prosecutor's closing argument—no reference to defendant's failure to testify

The trial court did not abuse its discretion or err by failing to intervene *ex mero motu* in a first-degree rape case by allowing several statements during the State's closing arguments. The challenged statements did not improperly refer to defendant's failure to testify.

Appeal by Defendant from judgment entered 19 August 2010 by Judge James E. Hardin, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 8 February 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Parker, for the State.*

*Cheshire, Parker, Schneider, & Bryan, P.L.L.C., by Maitri "Mike" Klinkosum, for Defendant.*

HUNTER, JR., Robert N., Judge.

### I. Factual & Procedural Background

On 15 February 2010, Robert Mitchell Foust ("Defendant") was indicted for first degree rape. Defendant pled not guilty, and the case came on for trial before Judge James E. Hardin, Jr. on 16 August 2010. The State's evidence at trial tended to show the following.

In late September 2008, Donna Toomes' fiancé passed away from liver cancer. Not long after that, in September or October 2008, Defendant, who worked at a garage diagonal to Ms. Toomes' home, came to her house to ask about her son. After that, Defendant began visiting often, even daily, and bringing Ms. Toomes beer, cigarettes, candy bars, etc. Ms. Toomes believed Defendant was just being friendly.

In early December 2008, Ms. Toomes was in her home visiting with George, a friend, and her mother, Dorothy Draver. Defendant came to the house, and an altercation with George broke out. On cross-examination, Defendant's counsel questioned Ms. Toomes about the altercation. These questions elicited responses that George told Ms. Toomes that Defendant hit him with a baseball bat and that there were broken items in the house after the altercation.

On 9 December 2008, Defendant had been drinking and again showed up at Ms. Toomes' house. While Ms. Toomes had a male visitor, Defendant said to Ms. Toomes, "I guess you're just a whore." He also told her, "I get it. You're just a slut." Ms. Toomes wrote about this incident in her day planner, stating, "I had to make Robert leave. He's disrespectful as hell. Perverted."

On 19 December 2008, Defendant went to Ms. Toomes' house and offered to take her to the grocery store. Defendant asked Ms. Toomes to go to the grocery store with him, and she agreed to go, as there were four other people at her home and she felt safe. They left for Harris Teeter, with Defendant driving a truck owned by Tommy Campbell, who owned the shop where Defendant worked.

After she entered the truck, Ms. Toomes noticed they were driving in the opposite direction from the Harris Teeter. Defendant turned onto a road, turned off the truck, and got out. Defendant then returned to the truck, turned the truck around, and stopped the truck again. Ms. Toomes told Defendant she was scared and uncomfortable. She had a straight razor in her back pocket that she pulled out and clicked twice.

Defendant then punched Ms. Toomes twice, once with his elbow and once with his fist. During the attack, Ms. Toomes' glasses were broken, and she began bleeding. Ms. Toomes asked Defendant why he hit her, and he responded that he had needs and that she was going to be the one to meet them. Defendant came over to the passenger side of the truck and pulled Ms. Toomes out by her legs, leaving her lying with her buttocks on the edge of the seat. Defendant pulled her jeans down to her knees, pushed her panties to the side, and forced her to have intercourse with him.

Ms. Toomes testified that she did not consent, repeatedly asking him why he was raping her and telling him that he did not have to do it. She stared at the ceiling of the truck during the attack. At one point, Ms. Toomes grabbed a shirt that was on the back of the truck seat to cover her face to stop the bleeding. When Defendant finished,

**STATE v. FOUST**

[220 N.C. App. 63 (2012)]

Ms. Toomes pulled herself back into the truck and convinced Defendant to drive her home. At her house, she tried to get out of the truck with the shirt in her hand. Defendant snatched the shirt from her and said, "What are you doing, trying to collect evidence against me?" Ms. Toomes told Defendant she would not tell anyone what had happened. She arrived home at 1:30 a.m. and told her roommate and a few other people present what happened, but did not call the police because she did not want Defendant to get violent with her or her kids.

The next day, Ms. Toomes told her mother about the rape, and her mother took pictures of her injuries. These photos were introduced at trial. Ms. Toomes put her clothes from that night, including her jeans, which had a broken zipper, into a plastic bag. She wrote in her planner a few hours after she got home that Defendant had raped and beaten her.

Martha Traugott, a special agent with the North Carolina State Bureau of Investigation ("SBI"), testified regarding her analysis of Ms. Toomes' clothes. Ms. Toomes' panties tested positive for semen, saliva, and blood. Her jeans tested positive for semen. Sharon Hinton, a forensic biologist with the SBI, testified that the sperm on the panties matched Defendant.

Ms. Draver testified that she was at Ms. Toomes' house the day of Defendant's altercation with George, and that Defendant was upset that he had to leave while George got to stay. Ms. Draver also testified regarding Ms. Toomes' statements to her the morning after the rape. She also testified that following the rape she had a conversation with Defendant where she said, "You have totally disrespected my home, one with a baseball incident on George, and two, when you raped my daughter. . . . You are never coming back on my property. . . . If you do, I will personally take you to the police station, and we'll get this matter done with." In response, Defendant said, "I'm sorry I disrespected your home."

Detective Larry Kernodle with the Alamance County Sherriff's Department testified that on 11 May 2009, he was investigating an unrelated matter and visited Ms. Toomes at her home to ask about Defendant. Ms. Toomes told him about the altercation with George and the incident on 9 December 2008 before describing the rape to him. During the course of the interview, Detective Kernodle collected Ms. Toomes' day planner, the photos of her following the assault, and the bag containing her clothes. Ms. Toomes rode with Detective Kernodle to the site of the assault, which Detective Kernodle recognized, as

Defendant had previously lived in a vehicle at the end of that dead end road. During cross-examination, the following exchange occurred:

Q  ([Defense Counsel]:) This, this incident happened in the, in the City of Burlington. Is that right?

A  Correct.

Q  All right. And, but Burlington PD hasn't taken part in the investigation at all, have they?

A  No, sir.

Q  So, is it safe to say you've taken a personal interest in the case?

[Prosecution]:  Well, objection, Your Honor.

COURT:  Sustained.

At the close of the State's evidence, Defendant made a motion to dismiss which was denied. Defendant made an offer of proof of two letters from potential witnesses but presented no evidence to the jury. Defendant renewed his motion to dismiss at the close of all the evidence, and the motion was denied.

During closing arguments, the State began its argument by saying

What happened in the fall of 2008 is no different than a hunter in the field, a beast in the field sitting [sic] a prey, stalking the prey, learning the prey, and at some point in time, eventually taking what he wants, and that's what happened here.

Defendant did not object to these statements. Also during the course of closing arguments, the State made the following statements:

Make no mistake, this was not two teenagers going out parking behind some area trying to make out. This was violent. This was forcible. This was brutal.

Uncontradicted, mind you, uncontradicted evidence of what he did to her. There's been no explanation. There's nothing saying, well, that could have been at a different time.

[Defense Counsel]:  Well, objection, Your Honor.

Court: Over-ruled.

[Prosecutor]:  There is no evidence whatsoever about these pictures not being taken the very next day. Un—unchallenged.

. . . .

But that's what happened to her. And again there's no other explanation for this. There's no challenge to this. There's no counter-argument, if you will, to how this happened. None. It is what it is.

. . . .

Ain't no other way that it got down there, and there certainly is no evidence whatsoever that there was any consensual sex. There's absolutely no evidence whatsoever of consensual oral sex. There's absolutely not one shred of evidence of any type of foreplay.

. . . .

And there's been not one shred of contrary expert testimony of any type to say there's a problem, 'cause there's not a problem.

Except for the objection to the first statement noted above, Defendant did not object to the remaining statements.

The jury found Defendant guilty of first degree rape. Defendant was sentenced to a minimum of 480 months and a maximum of 585 months imprisonment.

## II. Jurisdiction

Defendant appeals from a final judgment in superior court where he was convicted of a non-capital offense. Therefore, we have jurisdiction over his appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

## III. Analysis

Defendant first argues that the trial court committed plain error in introducing evidence of Defendant's altercation with George and of the 9 December name-calling incident. We disagree.

Because Defendant did not object at trial to any of the testimony regarding the two incidents, we review for plain error. *See* N.C. R. App. P. 10(a)(4) (allowing plain error to be specifically contended in criminal cases where an issue was not preserved at trial). Plain error is applied " 'cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations omitted). Plain

error occurs " 'where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty." ' " *Id.* (citations omitted).

Rule 404(b) of our Rules of Evidence states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2011). The evidence is admissible, however, for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* This list is not exclusive, however, and "evidence of other offenses *is admissible* so long as it is *relevant to any fact or issue* other than the character of the accused." *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987).

The determination of whether evidence was properly admitted under Rule 404(b) involves a three-step test. First, is the evidence relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried? Second, is that purpose relevant to an issue material to the pending case? Third, is the probative value of the evidence substantially outweighed by the danger of unfair prejudice pursuant to Rule 403?

There is a general rule of "*inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). This rule, however, is "constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). "It is not necessary that the similarities between the two situations rise to the level of the unique and bizarre." *State v. Aldridge*, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635 (2000). "Rather, the similarities simply must tend to support a reasonable inference that the same person committed both the earlier and later acts." *Id.*

[1] Defendant in the present case argues there are no similarities between the prior acts introduced and the crime charged. However, the common factor is that Ms. Toomes, the victim, was present and/or aware of each of the incidents. "In sex [offense] cases, the victim's state of mind can be relevant." *State v. Thompson*, 139 N.C. App. 299, 305, 533 S.E.2d 834, 839 (2000). "When it is relevant, any evidence tending to show the victim is afraid of [the defendant], or evidence

explaining why the victim never reported the sexual incidents to any-one, is admissible." *Id.*

The victim in the present case, Ms. Toomes, testified that she told Defendant she would not report him and that when she got out of the truck, Defendant said, "I've killed before, and I'm not afraid to do it again." Ms. Toomes said she did not call the police because she has two children and she did not want Defendant to come back and get violent with her while she was alone. She testified that she is alone a lot and was scared. Defendant, during closing arguments, questioned Ms. Toomes' failure to call the police and indicated that she would not have been afraid of Defendant. Through this, Defendant made Ms. Toomes' state of mind relevant. The previous altercation with George and the 9 December name-calling incident, both of which Ms. Toomes was aware of, demonstrate Defendant's aggression and support Ms. Toomes' account of her state of mind that she did not report the rape because she was afraid of Defendant. *See id.* ("The evidence of phys-ical abuse . . . tended to explain [the victim's] fear of defendant and why she never reported all the incidents of sexual abuse."). In addi-tion, Ms. Toomes' knowledge of these prior incidents shows that she was overcome by fears for her safety and that the rape was not con-sensual. *See State v. Young,* 317 N.C. 396, 413, 346 S.E.2d 626, 636 (1986) ("[E]vidence of a victim's awareness of prior crimes allegedly committed by the defendant may be admitted to show that the vic-tim's will had been overcome by her fears for her safety where the offense in question requires proof of lack of consent or that the offense was committed against the will of the victim."). Because the altercation with George and the 9 December name-calling incident were relevant to demonstrate Ms. Toomes' state of mind, the trial court did not commit plain error under Rule 404(b) in admitting the evidence. Additionally, we find that the probative value of this evi-dence in demonstrating Ms. Toomes' state of mind is not outweighed by any prejudice to Defendant.

**[2]** Defendant also alleges the trial court erred in sustaining the State's objection to Defendant's cross-examination of Detective Kernodle. Defendant questioned Detective Kernodle as follows:

> Q  ([Defense Counsel]:) This, this incident happened in the, in the City of Burlington. Is that right?
>
> A  Correct.
>
> Q  All right. And, but Burlington PD hasn't taken part in the

investigation at all, have they?

A  No, sir.

Q  So, is it safe to say you've taken a personal interest in the case?

[Prosecution]:  Well, objection, Your Honor.

COURT:  Sustained.

Defendant argues that this deprived Defendant of his rights to confrontation and cross-examination. We find that Defendant has not preserved this issue properly for appeal.

" '[A]lthough cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court.' " *State v. Larrimore*, 340 N.C. 119, 150, 456 S.E.2d 789, 805 (1995) (citation omitted). In order to establish error in the exclusion of evidence, there must be a showing of what the excluded testimony would have been. *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) ("It is well-established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify."). There must be a specific offer of proof unless the significance of the evidence is obvious from the record. *Id*. The substance of the witness's testimony is needed to determine whether there was prejudicial error in its exclusion. *Id*. In the cases cited by Defendant, there were offers of the evidence excluded. *See State v. Wilson*, 269 N.C. 297, 298, 152 S.E.2d 223, 224 (1967) (witness answered questions in absence of jury); *State v. Armstrong*, 232 N.C. 727, 728, 62 S.E.2d 50, 51 (1950) (providing the statements witnesses would have made if allowed); *State v. Clark*, 128 N.C. App. 722, 725, 496 S.E.2d 604, 606 (1998) (witness proffered testimony on *voir dire*); *State v. Helms*, 322 N.C. 315, 318, 367 S.E.2d 644, 646 (1988) (trial court conducted lengthy *voir dire*).

In the present case, Defendant did not request testimony outside of the presence of the jury and did not offer any evidence of what Detective Kernodle would have said in response to the question if allowed to testify. There is no mention in the record or in Defendant's brief of how Detective Kernodle would have testified. Absent some showing of what the content of the testimony excluded would be, there is no record for this and we therefore cannot examine the exclusion for error. *See Simpson*, 314 N.C. at 370, 334 S.E.2d at 60.

Defendant puts forward on appeal a constitutional argument that the trial court violated Defendant's right to confrontation. However, "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). Defendant's failure to raise constitutional claims with the trial court and his failure to present evidence of what Detective Kernodle's testimony would have been constitute a failure to preserve these issues for our review. *See State v. Reid*, 204 N.C. App. 122, 127, 693 S.E.2d 227, 232 (2010) ("We first note that defendant did not assert any constitutional claims in the trial court and failed to make a specific offer of proof when the trial court sustained the State's objections. Therefore, defendant has failed to preserve this issue for our review.").

[3] Defendant objected to several portions of the State's closing arguments. The State began its closing argument by saying

> What happened in the fall of 2008 is no different than a hunter in the field, a beast in the field sitting [sic] a prey, stalking the prey, learning the prey, and at some point in time, eventually taking what he wants, and that's what happened here.

Defendant did not object to this statement, so we must examine the argument to see if it was " 'so grossly improper that the trial court erred in failing to intervene *ex mero motu*.' " *State v. Walters*, 357 N.C. 68, 101, 588 S.E.2d 344, 364 (2003) (citation omitted). Defendant argues that the statement constituted "name-calling" and was improper. We disagree.

First, the State did not engage in "name-calling." In cases prohibiting name-calling, the prosecutor directly refers to the defendant by a derogatory name. *See, e.g., State v. Jones*, 355 N.C. 117, 133-34, 558 S.E.2d 97, 107-08 (2002) (finding improper remarks where the prosecutor called the defendant " 'this quitter, this loser, this worthless piece of' " and referred to the defendant as " 'lower than the dirt on a snake's belly' "); *State v. Twitty*, ___ N.C. App. ___, ___, 710 S.E.2d 421, 426 (2011) (finding the term "parasite" unnecessary and unprofessional, but not grossly improper). In the present case, the State employed an analogy comparing Defendant to a hunter or beast, but did not call Defendant a name.

Regardless of whether the prosecutor's argument may be characterized as name-calling, it is true that our courts "will not allow . . . arguments designed to inflame the jury, either directly or indirectly,

**STATE v. FOUST**

[220 N.C. App. 63 (2012)]

by making inappropriate comparisons or analogies." *Walters*, 357 N.C. at 105, 588 S.E.2d at 366. For instance, it has been held that referring to Hitler in order to inflame and impassion the jury is improper. *Id.* (concluding use of Hitler as the basis for an example was improper); *State v. Frink*, 158 N.C. App. 581, 594, 582 S.E.2d 617, 624 (2003) (finding comparison of the defendant to a leading member of the Nazi party improper, although the requisite prejudice was not demonstrated). Similarly, our Supreme Court has found that references to the Oklahoma City bombing and the Columbine school shootings "urged jurors to compare defendant's acts with the infamous acts of others" and "attempted to lead jurors away from the evidence by appealing instead to their sense of passion and prejudice." *Jones*, 355 N.C. at 132, 558 S.E.2d at 107.

The analogy in the present case has none of the historical implications of the objectionable arguments in *Walters*, *Frink*, and *Jones*. It lacks the capacity of those arguments to inflame and impassion the jury. Instead, it is an analogy used to explain the State's theory of the crime.

The statement " 'he who hunts with the pack is responsible for the kill' " has been accepted by our courts as an illustration of the theory of acting in concert. *State v. Bell*, 359 N.C. 1, 20, 603 S.E.2d 93, 107 (2004) (quoting *State v. Lee*, 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970)). In *Bell*, our Supreme Court found no error where the prosecutor built upon this premise, describing how animals hunt their prey. *Id.* However, in *State v. Roache*, 358 N.C. 243, 297-98, 595 S.E.2d 381, 416 (2004), the Court found as improper statements that went beyond this to say the defendant was " 'high on the taste of blood and power over [his] victims.' " Still, the Court held that given the overwhelming evidence of the defendant's guilt, the trial court did not err in failing to intervene *ex mero motu*. *Id.* at 298, 595 S.E.2d at 416.

The remarks in the present case are much more like those in *Bell* than *Roache*. The State compared Defendant to a hunter or beast of the field, describing how animals hunt their prey to illustrate its theory of the rape. Unlike *Roache*, there was no characterization of Defendant himself, and the analogy was limited to non-inflammatory statements. The trial court did not err in failing to intervene *ex mero motu*.

[4] Defendant also argues that the trial court erred in allowing several statements during the State's closing arguments as follows:

Make no mistake, this was not two teenagers going out parking behind some area trying to make out. This was violent. This was forcible. This was brutal.

Uncontradicted, mind you, uncontradicted evidence of what he did to her. There's been no explanation. There's nothing saying, well, that could have been at a different time.

[Defense Counsel]: Well, objection, Your Honor.

Court: Over-ruled.

[Prosecutor]: There is no evidence whatsoever about these pictures not being taken the very next day. Un—unchallenged.

. . . .

But that's what happened to her. And again there's no other explanation for this. There's no challenge to this. There's no counter-argument, if you will, to how this happened. None. It is what it is.

. . . .

Ain't no other way that it got down there, and there certainly is no evidence whatsoever that there was any consensual sex. There's absolutely no evidence whatsoever of consensual oral sex. There's absolutely not one shred of evidence of any type of foreplay.

. . . .

And there's been not one shred of contrary expert testimony of any type to say there's a problem, 'cause there's not a problem.

Except for the objection to the first statement noted above, Defendant did not object to the remaining statements. Therefore, we examine the first statement for abuse of discretion and the remaining statements for whether the trial court erred in not intervening *ex mero motu*. *Walters*, 357 N.C. at 101, 588 S.E.2d at 364. Defendant argues that these statements improperly refer to his failure to testify. We disagree.

"It is . . . well settled that when a defendant exercises his right to silence, it 'shall not create any presumption against him,' and any comment by counsel on a defendant's failure to testify is improper and is violative of his Fifth Amendment right." *State v. Ward*, 354 N.C.

**STATE v. FOUST**

[220 N.C. App. 63 (2012)]

231, 250-51, 555 S.E.2d 251, 264 (2001) (citations omitted). A prosecutor may not comment on a defendant's failure to testify during closing arguments. *State v. Williams*, 341 N.C. 1, 13, 459 S.E.2d 208, 216 (1995). However, a prosecutor can bring out the defendant's " 'failure to produce exculpatory evidence or to contradict evidence presented by the State.' " *Id.* (citation omitted).

Our Supreme Court has found that statements by the district attorney that the evidence is "uncontradicted" are not improper. *State v. Stephens*, 347 N.C. 352, 361, 493 S.E.2d 435, 441 (1997) ("[A] prosecutor's argument that the State's evidence was uncontradicted does not constitute an improper reference to the defendant's failure to testify."). In *State v. Smith*, 290 N.C. 148, 165-66, 226 S.E.2d 10, 21 (1976), the district attorney repeatedly argued that the evidence was uncontradicted. Our Supreme Court found that "[c]ontradictions in the State's evidence, if such existed, could have been shown by the testimony of others or by cross-examination. . . . Thus, the prosecution was privileged to argue that the State's evidence was uncontradicted and such argument may not be held improper as a comment upon defendant's failure to testify." *State v. Smith*, 290 N.C. 148, 168, 226 S.E.2d 10, 22 (1976).

In the present case, the objectionable statements included (1) that it was "uncontradicted" that the event was not consensual and was forcible and brutal and "[t]here's been no explanation" for the event; (2) that there is no evidence that the photographs were not taken the day after the rape and they were "unchallenged;" (3) that there was no other explanation or counter-argument for the broken zipper; (4) that there was no evidence of consensual sex, consensual oral sex, or foreplay; and (5) that there was no contrary expert testimony pointing out a problem with the DNA evidence. None of these statements refer to Defendant's failure to testify at trial. The evidence referred to above could have been contradicted by other witness testimony or through cross-examination of the State's witnesses. As the State did not refer to Defendant's failure to testify, the trial court did not abuse its discretion or err in failing to intervene *ex mero motu* during the State's closing arguments.

## IV. Conclusion

For the foregoing reasons, we find

No error.

Judges STEELMAN and GEER concur.