STATE OF NORTH CAROLINA
v.
WILLIE MACK McCOY, JR., Defendant

No. COA12-1210

Filed 6 August 2013

**1.  Evidence—internal police investigation report—not material**

The trial court did not err in an assault and rape case by refusing to provide to defense counsel, during trial, an internal investigation report prepared by the Fayetteville Police Department's Office of Professional Standards and Inspections regarding a lead detective in the investigation. The information contained in the report was not material as it could not reasonably have been taken to put the whole case in such a different light as to undermine confidence in the verdict.

**2.  Evidence—prior violent conduct by third-party—too attenuated—not inconsistent with defendant's guilt**

The trial court did not err in an assault and rape case by excluding evidence that a third party who knew the victim in this case had previously assaulted a person other than the victim. The evidence was too attenuated to directly implicate the third-party in the physical assaults committed on the victim and the evidence was not inconsistent with defendant's own guilt.

Appeal by defendant from judgments entered 8 December 2011 by Judge Thomas Lock in Cumberland County Superior Court. Heard in the Court of Appeals 22 April 2013.

*Roy Cooper, Attorney General, by Anne M. Middleton, Assistant Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Andrew DeSimone, Assistant Appellate Defender, for defendant-appellant.*

DAVIS, Judge.

Defendant Willie Mack McCoy, Jr. ("defendant") appeals from his convictions for assault inflicting physical injury by strangulation, simple assault, and second-degree rape. After careful review, we find no error.

## Factual Background

The State's evidence at trial tended to establish the following facts: Defendant and D.R. ("Dana")[1] lived together, off and on, for approximately eight and a half years and had two children together. Defendant was physically abusive during their relationship, and Dana ultimately decided to leave him in May 2009. She called Teresa Brown ("Brown") for assistance and subsequently began living with Brown in Fayetteville, North Carolina. Brown and Dana had become friends earlier when Dana called to explore the possibility of obtaining a job at Brown's escort service. Brown did not employ Dana as an escort because she believed Dana "was not cut out for th[at] kind of work." However, Dana would sometimes accompany "Kaitlyn Rose," a woman employed by Brown as an escort, on her calls to collect money from customers.

On 1 August 2009, Brown took Dana and Kaitlyn Rose to a Courtyard Marriot hotel to meet a client. Dana was walking toward the door of the hotel when defendant suddenly appeared and began to kick and punch her to the ground. He then dragged Dana to his car, forced her inside, and drove away. Bryan King ("King"), a customer of the escort service, observed this incident.

Defendant continued to assault Dana while he drove her to a friend's house. While they were in the car, defendant hit her with a glass bottle and choked her until she lost consciousness. Defendant then took Dana

---

1. Pseudonyms are used throughout this opinion to protect the privacy of the individuals and for ease of reading.

to a hotel room in Dunn, North Carolina. Several days later, defendant moved her to a hotel room in Smithfield. During this time period, defendant would not allow her to leave and forced her to have sex with him.

Police officers — who had spoken with Brown and hotel staff at the Courtyard Marriot — tracked defendant's cell phone and found him and Dana in the Smithfield hotel room. Defendant was arrested, and Dana was taken to the hospital, where she was treated for injuries and contusions to her face, chest, arms, and legs. Medical personnel also observed broken blood vessels and bleeding in Dana's eyes and redness around her neck. An investigation into these crimes was initiated by the Fayetteville Police Department. A sexual assault examination was performed on Dana which revealed bruising and inflammation to her vagina. A semen sample collected from her vaginal smear matched defendant's DNA profile.

Defendant was subsequently charged with first-degree kidnapping, assault inflicting physical injury by strangulation, first-degree forcible rape, assault with a deadly weapon, communicating threats, five counts of second-degree rape, second-degree sexual offense, and crime against nature. A jury trial was held, and at the close of the State's evidence, the trial court dismissed two counts of second-degree rape and the charge of communicating threats. The trial court also reduced the charge of first-degree forcible rape to second-degree rape. The jury found defendant guilty of assault inflicting physical injury by strangulation, simple assault (a lesser-included offense of assault with a deadly weapon), and one count of second-degree rape and acquitted him of an additional count of second-degree rape. The jury was unable to reach a verdict on the remaining two counts of second-degree rape and the charges of first-degree kidnapping, second-degree sexual offense, and crime against nature. The trial court declared a mistrial on these charges.

Defendant was sentenced to consecutive presumptive-range terms of 116-149 months for second-degree rape and 10-12 months in a consolidated judgment for the assault inflicting physical injury by strangulation and simple assault offenses. Defendant gave notice of appeal in open court.

## Analysis

### I.  Internal Investigation Report

[1] Defendant's first argument is that the trial court erred in refusing to provide to defense counsel, during trial, an internal investigation report prepared by the Fayetteville Police Department's Office of Professional Standards and Inspections ("OPSI Report") regarding Detective Michael

Baldwin ("Detective Baldwin"), a lead detective in the investigation. For the reasons set out below, we disagree.

During the trial, prosecutors were made aware — and proceeded to inform the trial court and defense counsel — of an ongoing internal investigation of Detective Baldwin by the Fayetteville Police Department's Office of Professional Standards and Inspections. After learning of the internal investigation, the State decided not to call Detective Baldwin as a witness. The trial court obtained a copy of the OPSI Report and, based on defense counsel's request that he be provided with a copy of the report, conducted an examination of the report *in camera*. After reviewing the document, the trial court issued the following oral ruling:

> The Court has reviewed the 24-page report prepared by Sergeant Christopher Joyce of the Fayetteville Police Department Office of Professional Standards and Inspections, which report is dated 14 September 2011, and which report summarizes the findings of an Internal Affairs investigation conducted by the Fayetteville Police Department as a result of a complaint or report received by the department in June of 2011 concerning a problem that Detective Michael Baldwin might be experiencing in his personal life. The Internal Affairs report is presently pending before the appropriate reviewing agency or committee of the Fayetteville Police Department, but has not yet been acted upon. The nature of the problem investigated is such that it could have affected Detective Baldwin's job performance at times. However, there is no evidence that Detective Baldwin was experiencing this problem at the time of his investigation of the crimes presently before the Court. The Internal Affairs report also suggests that Detective Baldwin may have provided false, deceptive, or misleading information concerning the nature or extent of his personal problem to officers conducting the Internal Affairs investigation. The Court makes no finding as to whether or not any information provided by Detective Baldwin during the Internal Affairs – during the Internal Affairs investigation was in fact false, deceptive or misleading. The Court does find specifically that there is no evidence that Detective Baldwin's work in the case before the Court was tainted in any respect at all by any personal problems that Detective Baldwin may have been experiencing earlier this year or that Detective Baldwin's work

STATE v. McCOY

[228 N.C. App. 488 (2013)]

in this case was tainted to any extent at all by any information, even if false, deceptive or misleading, that Detective Baldwin may have provided to Internal Affairs investigators concerning the complaint leading to the – this Internal Affairs investigation. The Court concludes that the internal affairs report provided to the Court this day pursuant to an order of this Court is a part of the office [sic] of his personnel file and shall remain - should remain and shall remain confidential. The Court concludes that no statutory or constitutional rights, either federal or state, of the defendant in this case compels disclosure of that report to the defendant. The Internal Affairs report shall be placed, by the clerk of Superior Court in Cumberland County, under seal and shall be placed in the Court file in this case and shall remain under seal unless ordered unsealed and opened later by this Court or by some other court of competent jurisdiction. . . .

The trial proceeded to completion with neither the prosecution nor the defense being made aware of the contents of the OPSI Report. Detective Baldwin was never called as a witness.

During the preparation of the record on appeal, defendant's appellate counsel requested and obtained a copy of the sealed OPSI Report from the trial court. The trial court ordered appellate counsel "not [to] disseminate the sealed documents except as necessary in connection with the appeal."[2]

Defendant argues on appeal that the trial court's refusal to disclose the OPSI Report's contents to his trial counsel violated his due process rights. Our task on appeal is to "examine the [OPSI Report] to determine whether [it] contain[s] information that is favorable and material to [defendant's] guilt or punishment." *State v. Thompson*, 187 N.C. App. 341, 353, 654 S.E.2d 486, 494 (2007). In so doing, we review the trial court's determination *de novo. State v. Scott*, 180 N.C. App. 462, 463, 637 S.E.2d 292, 293 (2006), *disc. review denied*, 361 N.C. 367, 644 S.E.2d 560 (2007). "If the sealed record[] contain[s] evidence which is both favorable and material, defendant [was] constitutionally entitled to disclosure of this evidence." *State v. McGill*, 141 N.C. App. 98, 102, 539 S.E.2d 351, 355 (2000) (citation and quotation marks omitted).

---

2. Copies of the OPSI Report were filed under seal with this Court as were the portions of the parties' briefs specifically referencing the contents of the OPSI Report.

**STATE v. McCOY**

[228 N.C. App. 488 (2013)]

The crux of defendant's argument is that if the defense had been provided with the report at trial, it could have called Detective Baldwin as a defense witness and utilized the information within the report to (1) discredit Detective Baldwin; (2) attack the integrity of the investigation; and (3) support the defense's theory that law enforcement "rushed to judgment" in charging defendant.

It is well established that favorable evidence includes both (1) evidence which tends to exculpate defendant; and (2) evidence that undermines the credibility of the State's witnesses. *State v. Thaggard*, 168 N.C. App. 263, 280, 608 S.E.2d 774, 785 (2005). Such evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 94 L.Ed.2d 40, 57 (1987). A reasonable probability "is a probability sufficient to undermine confidence in the outcome" and the defendant bears "the burden of showing that the undisclosed evidence was material and affected the outcome of the trial." *State v. Tirado*, 358 N.C. 551, 589-90, 599 S.E.2d 515, 540-41 (2004) (citation and quotation marks omitted), *cert. denied*, 544 U.S. 909, 161 L.Ed.2d 285 (2005).

After a careful review of the OPSI Report, we conclude that the trial court did not violate defendant's constitutional rights by refusing to disclose the contents of the report to his trial counsel. In our view, the information contained therein does not meet the materiality test set out above.

In asserting the argument that the report was material, defendant analogizes this case to *Kyles v. Whitley*, 514 U.S. 419, 131 L.Ed.2d 490 (1995). However, we find *Kyles* distinguishable from the present case. In *Kyles*, the prosecution failed to disclose statements made by a police informant who was never called to testify in the defendant's trial. *Id.* at 425, 131 L.Ed.2d at 500. The informant's statements were self-incriminating, indicated the informant's personal interest in the defendant's arrest for the crime, and significantly weakened the testimony of the prosecution's key eyewitnesses. *Id.* at 442, 131 L.Ed.2d at 510. The informant's statements were also rife with inconsistencies, and the Supreme Court determined that had the defense obtained these statements, it could have attacked "not only the probative value of crucial physical evidence . . . but the thoroughness and even good faith of the investigation, as well." *Id.* at 445, 131 L.Ed.2d at 512-13.

Despite defendant's assertions to the contrary, the evidence contained in the OPSI Report of Detective Baldwin is not analogous to the

withheld statements in *Kyles*. We cannot agree with defendant's contention that the evidence of problems Detective Baldwin may have been experiencing in his personal life, or his description of those problems to officers with the Office of Professional Standards and Inspections, would have been likely to (1) undercut the integrity or good faith of the investigation into the crimes committed against Dana; or (2) cause the jury to doubt Dana's testimony simply because Detective Baldwin remained in periodic contact with her in the months prior to trial.

As such, we do not believe that this evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 131 L.Ed.2d at 506. *See State v. Alston*, 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.") (citation and quotation marks omitted).

Here, as stated above, the prosecution chose not to call Detective Baldwin as a witness after learning that he was the subject of a pending investigation by the Office of Professional Standards and Inspections. Instead, the State proceeded to prove its case using the testimony of several other law enforcement officers directly involved in the investigation of the crimes committed against Dana, namely Detective Jeffrey Hoedemaker ("Detective Hoedemaker"), a primary investigator in the case. Detective Hoedemaker testified extensively on numerous aspects of the investigation, including the procedures he used to track defendant's cell phone to the hotel in Smithfield, his collaboration with the U.S. Marshals Service to serve arrest warrants on defendant, and his interviews with the managers of the Dunn and Smithfield hotels. The State also relied on the testimony of Lieutenant Robert Powell of the Smithfield Police Department; William Brady, a former lieutenant with the Dunn Police Department; and several forensic investigators with the Dunn and Fayetteville Police Departments to establish its case.

We are, therefore, unable to conclude that the OPSI Report was "material[] in the constitutional sense" when the State was able to prove its case through the testimony of other law enforcement officers and without Detective Baldwin ever taking the stand. For all of these reasons, defendant's arguments on this issue are overruled.

## II. Admissibility of Evidence of Prior Violent Conduct by Brown

[2] In his second argument, defendant contends that the trial court erred in excluding evidence that Brown had previously assaulted Kaitlyn Rose. Defendant asserts that the exclusion of this evidence violated his

constitutional right to present his defense, "which include[s] the right to present relevant evidence tending to show that someone else might have committed the crime with which the defendant was charged." We disagree.

The admissibility of evidence suggesting the potential guilt of a third party is governed by the general principle of relevancy set out in Rule 401 of the North Carolina Rules of Evidence. *State v. Bullock*, 154 N.C. App. 234, 241, 574 S.E.2d 17, 22 (2002).

> Evidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard. It must point directly to the guilt of the other party. Under Rule 401 such evidence must tend both to implicate another *and* be inconsistent with the guilt of the defendant.

*State v. Cotton*, 318 N.C. 663, 667, 351 S.E.2d 277, 279-80 (1987) (emphasis in original) (internal citations omitted). However, "[e]vidence which tends to show nothing more than that someone other than the accused had an opportunity to commit the offense, without tending to show that such person actually did commit the offense and that therefore the defendant did not do so, is too remote to be relevant and should be excluded." *State v. Brewer*, 325 N.C. 550, 564, 386 S.E.2d 569, 576 (1989) (citation and quotation marks omitted), *cert. denied*, 495 U.S. 951, 109 L.Ed.2d 541 (1990).

We note that defendant has properly preserved this issue for our review by making an offer of proof — by means of an examination of Brown outside the presence of the jury — as to what the proffered evidence would have shown. *See State v. Reid*, 204 N.C. App. 122, 127, 693 S.E.2d 227, 231 (2010) ("In order for this Court to rule on the trial court's exclusion of evidence, a specific offer of proof is required unless the significance of the excluded evidence is clear from the record.") (citation and quotation marks omitted). However, we believe that the trial court's exclusion of this evidence was not erroneous because the evidence defendant sought to offer regarding Brown's alleged prior violence against Kaitlyn Rose (1) raises nothing more than sheer conjecture that Brown — rather than defendant — could have inflicted the injuries on Dana; and (2) is not inconsistent with defendant's guilt.

During the offer of proof, Brown testified that she had previously been involved in a physical altercation with Kaitlyn Rose. Brown explained that the assault had occurred because the two were

involved in a romantic relationship — not because Kaitlyn Rose was her employee. Brown further testified that she never argued with or physically assaulted Dana.

We are of the view that evidence that Brown previously assaulted *Kaitlyn Rose* is too attenuated to directly implicate her in the physical assaults committed on *Dana*. Moreover, we believe that such evidence is not inconsistent with defendant's own guilt given the testimony from both Dana, who testified that defendant beat and raped her over the course of several days, and King, an eyewitness who corroborated Dana's testimony about being punched in the face and thrown into a car outside the Courtyard Marriot hotel. *See State v. McNeil,* 326 N.C. 712, 721-22, 392 S.E.2d 78, 84 (1990) (holding that evidence of third party's theft of cigar box from murder victim's home was properly excluded because it did not implicate him of murder or exculpate defendant). Accordingly, defendant's argument on this issue lacks merit.

## Conclusion

For the reasons stated above, we conclude that defendant received a fair trial free from error.

NO ERROR.

Chief Judge MARTIN and Judge BRYANT concur.